In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 19-2737

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY MORGAN,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 CR 158 — **Charles R. Norgle**, *Judge.*

———————

ARGUED SEPTEMBER 30, 2020 — DECIDED FEBRUARY 3, 2021

———————

Before SYKES, *Chief Judge*, and WOOD and BRENNAN, *Circuit Judges*.

WOOD, *Circuit Judge*. Anthony Morgan pleaded guilty to conspiring to receive seven firearms from out of state without the necessary licenses, in violation of 18 U.S.C. § 371. The district court imposed a 48-month sentence and various conditions of supervised release. Morgan raises several challenges to his sentence, but we find merit in only one. He contends

that the district court failed to justify supervised-release condition 23 with reference to the sentencing criteria in 18 U.S.C. § 3553, and that it did not explain why this condition had to be added to the rest of the discretionary conditions. We agree with him and thus order a remand limited to this point.

# I

Over a period of two years, Morgan transferred funds (using the services of a Walmart in Illinois) to an acquaintance living in New Mexico. The recipient, who remains unnamed, used those funds to buy guns in New Mexico and mail them to Morgan's residence in Chicago. Seven firearms made their way northeast in that manner. It is unclear who was on the receiving end of the shipments. While Morgan admits that the firearms were sent to his home, and that several of his housemates (as he puts it, "friends [and] brothers") had direct access to the residence and thus the parcels, Morgan could not recall in whose hands the guns came to rest. Law-enforcement officers eventually recovered six of the guns. Several were linked to gang-related homicides, including one of a child.

In 2018, the United States charged Morgan with violating 18 U.S.C. § 371 (conspiracy) and 18 U.S.C. § 922(a)(3) (unlicensed receipt of a firearm). He pleaded guilty to the conspiracy charge, which specified that he had unlawfully received firearms purchased outside the State of Illinois while not being a licensed importer, manufacturer, dealer, or collector. The plea agreement provided that the substantive receipt charge would be dropped.

In anticipation of Morgan's sentencing, the U.S. Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR assigned Morgan an offense level of 17, a criminal

history category of I, and an anticipated sentencing guidelines range between 24 to 30 months' incarceration. The offense level of 17 factored in Morgan's acceptance of responsibility, which brought his offense level from 20 down to 17. Morgan's counsel did not object to these calculations.

At the start of the sentencing hearing on August 27, 2019, the district court accepted the PSR and its findings. Stressing the gun violence that had followed in the wake of Morgan's scheme, the government pushed for the statutory maximum of 60 months. Morgan asked for a sentence of 24 months, the low end of his guidelines range.

Before the judge imposed the sentence, the following exchange took place:

> Morgan: First, I just want to apologize to the Court and my mother and family. And I'm just sorry for what I have done. And I take full responsibility for my actions. And I know—I know now that—I knew that it wasn't right, and again, I'm just sorry.

> Court: When you say you knew it wasn't right, what do you mean?

> Morgan: That I knew that I wasn't a licensed gun collector or anything, and that me receiving guns and making them accessible or knowing they was accessible was wrong.

> Court: Accessible to whom?

> Morgan: Anybody that was in and out of that house.

> Court: Well, who was in and out of the house?

> Morgan: Friends, brothers. That's it.

> Court: Have you completed the sentence?

Morgan: Yes.

Court: Friends and brothers?

Morgan: And myself. I was in and out of the house.

…

Court: All right. The defendant has been given credit for responsibility—acceptance of responsibility. But this statement ignores totally the government's argument and position that when the defendant distributed the guns that he knew that they would be used for unlawful purposes by gang members, not just friends and family. And so this is a total failure to accept the reality of the situation….

The court then stated that Morgan's omission of any description of the gang involvement with the guns he had procured amounted to a total failure to come to grips with the collateral consequences of his actions. This, the court said, "is a factor" that it would take "into account in pronouncing the sentence." Before the court pronounced sentence, however, Morgan's counsel asked that Morgan have a chance to follow up on his allocution. The court agreed to hear him. Morgan then stated: "When I said family and friends, [I meant] the gang bangers that was mentioned in the government report. I didn't want to avoid what I was—my actions or what I was admitting to. I'm sorry for that." Morgan did not specify the names of the recipients or what he expected the recipients to do with the guns, beyond anticipating that they would be used for "illegal things."

Ultimately the court sentenced Morgan to 48 months' incarceration, commenting that this "case cries out for a sentence that is fair but heavy enough" for general deterrence. In rejecting the government's request for an above-guideline

sentence of 60 months, the court explained that "there are indeed many 3553 factors that the Court has to consider, and I have indeed done so, including various letters submitted by the defense counsel."

The court also imposed several discretionary conditions of release. One of these conditions, condition 16, authorized the probation office to visit Morgan at home, work, school, or other locations and confiscate any contraband in plain view. Another condition, condition 23, authorized the probation office to search Morgan's "person, property, house, residence, vehicle, papers, [computers], or office," if the search was supported by reasonable suspicion.

Morgan raises three issues on appeal: (1) that the 48-month prison sentence was substantively unreasonable and procedurally defective: (2) that the district court committed clear error by refusing to credit his acceptance of responsibility; and (3) that the court abused its discretion by imposing discretionary condition 23. We address them in that order.

**II**

A

1

Federal criminal sentences must be both procedurally sound and substantively reasonable. We evaluate procedural challenges to sentences *de novo*. *United States v. Pennington*, 908 F.3d 234, 238 (7th Cir. 2018). The process for sentencing must begin with "correctly calculating the applicable Guideline range." *Gall v. United States*, 552 U.S. 38, 49 (2007); *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018). Sentencing courts must also explain themselves, and a deficient explanation may give rise to procedural error. *United States v. Lyons*,

733 F.3d 777, 784–86 (7th Cir. 2013). A judge's explanation of her sentencing decision is particularly important in cases where the final sentence significantly exceeds the guideline range. *United States v. Lockwood*, 789 F.3d 773 (7th Cir. 2015).

When evaluating the procedural soundness of a sentence, we do not explore its reasonableness; that inquiry is reserved for a substantive challenge. *United States v. Castro–Juarez*, 425 F.3d 430, 433 (7th Cir. 2005). For procedural purposes, "[w]hile more detail is always better than less in sentencing findings," the burden on the sentencing judge is not particularly onerous. *United States v. Burke*, 148 F.3d 832, 836 (7th Cir. 1998). Accordingly, we have permitted courts to discharge their obligations by expressly adopting the factual findings and the guideline recommendations in the PSR. *United States v. Taylor*, 135 F.3d 478, 483 (7th Cir. 1998); see also *United States v. Pippen*, 115 F.3d 422, 424 (7th Cir. 1997); *United States v. McKinney*, 98 F.3d 974, 981–82 (7th Cir. 1996).

Substantive reasonableness is a different matter. We review the district judge's choice of a sentence deferentially, under the abuse-of-discretion standard. *United States v. Wallace*, 531 F.3d 504, 507 (7th Cir. 2008). When evaluating the sentence, we recognize "that substantive reasonableness occupies a range, not a point, and that the sentencing judge is in the best position to apply the § 3553(a) factors to the individual defendant." *United States v. Warner*, 792 F.3d 847, 856 (7th Cir. 2015) (internal quotations omitted). On appeal, we presume that "a within-guidelines sentence is reasonable." *Id*. at 856 (citing *Rita v. United States*, 551 U.S. 338, 341 (2007)).

That does not mean, however, that a sentence that falls above the guideline range is *un*reasonable, either presumptively or absolutely. *United States v. Henshaw*, 880 F.3d 393, 396

(7th Cir. 2018). For such sentences, we "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *Gall*, 552 U.S. at 50. Greater deviations require more thorough justifications. *Id*. Nonetheless, we do not need to find "extraordinary circumstances to justify a sentence outside the Guidelines range," and the Supreme Court has rejected "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id*. at 47. "As long as the sentencing judge gives adequate justification," the judge "may impose a sentence above the guidelines range if he believes the range is too lenient." *United States v. Hayden*, 775 F.3d 847, 849 (7th Cir. 2014).

2

In light of these principles, we conclude that Morgan's 48-month prison sentence was neither procedurally unsound nor substantively unreasonable. At the start of the sentencing proceedings, the court expressly adopted the PSR and its findings for purposes of sentencing. As we mentioned, it assigned a guideline range of 24 to 30 months to Morgan. The court alluded to this fact when it imposed the sentence:

> It is the judgment of the Court that you serve 48 months in the Bureau of Prisons. The recommendation of the probation officer is a good one, 30 months. The government is recommending the maximum sentence in this case. Defense counsel has said within the guideline range would be appropriate but at the lower end of 24.

The court also discussed the section 3553 factors thoroughly. It emphasized sections 3553(a)(2)(1) and (2), which call on the court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed … to reflect the seriousness of the offense … and to afford adequate deterrence to criminal conduct." It highlighted the context of Morgan's crimes, noting that Morgan knowingly affiliated himself with gang members and introduced seven guns into their hands while knowing that the gang was involved in conflicts with rivals. The court further explained that it wanted to promote general deterrence through its 48-month sentence. We see no procedural error in its approach.

Nothing in this record would support a finding that the 48-month sentence was substantively unreasonable, either. The court reasoned that "anyone in the public should be aware … [i]f you distribute as many as seven guns, knowing that they will be picked up and used by gang members for unlawful consequences … you are going to the Bureau of Prisons for a fair but appropriate sentence." If Morgan's sentence was too light, the court added, it would "deprecate[] the seriousness of what has happened." We are satisfied that the court did not abuse its discretion in reaching its decision.

B

Morgan next argues that the district court committed clear error by failing to credit his acceptance of responsibility. *United States v. Schuler*, 34 F.3d 457, 460 (7th Cir. 1994) (articulating the clear "error" standard of review on this issue). But this argument proceeds from an inaccurate premise. In fact, the court did give Morgan credit (to the tune of three offense levels) for acceptance of responsibility. It reflected that

decision both through its adoption of the guidelines calculations in the PSR and in its remarks at sentencing. When it nonetheless expressed concern that Morgan's allocution appeared to be inconsistent with acceptance of responsibility, it was doing no more than considering whether the section 3553 factors called for a sentence that deviated from the guidelines range, as was its right.

Criminal sentencing has not been rigidly governed by the Sentencing Guidelines for more than 15 years, when the Supreme Court handed down *United States v. Booker*, 543 U.S. 220 (2005). Instead, guided by 18 U.S.C. § 3553 and relevant statutory maxima and minima, the judge is free to select a sentence within, below, or above the guidelines. That is all that this sentencing judge did.

C

Last, Morgan argues that the court abused its discretion by imposing discretionary supervised release condition 23. Here, he has a point, and he preserved it by objecting at the correct time in the district court. Although a sentencing judge has "wide discretion in determining the conditions of supervised release," *United States v. Adkins*, 743 F.3d 176, 193 (7th Cir. 2014), this discretion is not without limits. "*All* discretionary conditions … require findings," *United States v. Kappes*, 782 F.3d 828, 846 (emphasis in original), and a judge considering a condition of supervised release must "make an *independent* judgment … of the appropriateness of the recommended conditions" by referring to the defendant's conduct and character rather than on the basis of generalizations about the defendant's crime and criminal history. *United States v. Siegel*, 753 F.3d 705, 716–17 (7th Cir. 2014) (emphasis in original). A condition of release must be (1) "reasonably related to the factors

identified in § 3553(a)," (2) "involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a)," and (3) be "consistent with the policy statements issued by the Sentencing Commission." *United States v. Evans*, 727 F.3d 730, 733 (7th Cir. 2013).

Reversal is not warranted every time a judge fails adequately to justify a discretionary condition of supervised release; any such error must make a difference—that is, it must not be harmless. *Siegel*, 753 F.3d at 713. In cases where multiple conditions of supervised release are imposed, we have held that a condition that duplicates the liberty constraints of another may be removed without remanding the case, because the error is harmless. See *United States v. Chatman*, 805 F.3d 840, 847 (7th Cir. 2015). On the other hand, some type of remand is necessary in other circumstances. So, for example, when we find non-harmless "error in the supervised release portion of the sentence, but no error in the custodial portion," we have remanded "for resentencing of the supervised release issue only." *Kappes*, 782 F.3d at 866. In other circumstances, we have remanded "for an entire resentencing because reconsideration of those [vacated] conditions may conceivably induce [the judge] to alter the prison sentence that he imposed." *Id.* (cleaned up).

The judge in Morgan's case imposed two conditions of supervised release (both discretionary) that are relevant to this appeal. We reproduce them in full:

> (16) [x] you shall permit a probation officer to visit you [x] at any reasonable time or [x] as specified:
> [x] at home      [x] at work    [x] at school  [x]   at   a community service location    [x] other reasonable location specified by a probation officer        [x]     you

shall permit confiscation of any contraband observed in plain view of the probation officer.

…

(23) You shall submit your person, property, house, residence, vehicle, papers, [computers (as defined in 18 U.S.C. 1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States Probation Officer(s). Failure to submit to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer(s) may conduct a search pursuant to this condition only when reasonable suspicion exists that you have violated a condition of your supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

Judges generally impose condition 23 on sex offenders who are required to register under the Sex Offender Registration and Notification Act. See U.S.S.G. § 5D1.3(d)(7)(C). That does not describe Morgan. The judge reasoned, however, that "having a probation officer from time to time, where appropriate, and using reasonable discretion, decides [*sic*] to make a visit to where the defendant resides or to inspect a house or residence or vehicle for guns … would be appropriate in this case … [g]iven the nature of the offense … especially where … some of those weapons have been used for these unfortunate collateral consequences."

At a high level of generality, the judge may have been making a valid point, but nothing in that remark explains why

*both* condition 16 *and* condition 23 were necessary. Under condition 16, a probation officer already is permitted to visit Morgan's home or other reasonable location and conduct a superficial inspection, even without reasonable suspicion. Although Morgan did obtain "weapons" that were used in "unfortunate collateral consequences," there is no indication that Morgan used computers or that a search warrant was ever executed on his home. Instead, the judge's reason for imposing condition 23 seems to be just the fact that Morgan committed the crime—something, in other words, that would apply to every defendant. That will not do. Moreover, even on the assumption that there are some cases in which both condition 16 and condition 23 are warranted, the judge offered no reason to think that this is one of those cases.

In our view, the appropriate remedy for that omission is to vacate condition 23 and remand exclusively on that point to the district court, so that it can reconsider whether both condition 16 and 23 are necessary and to explain why (or why not). It is not apparent why a condition that is historically tied to computer-mediated offenses is appropriate for someone who illegally procured guns for a street gang. Yet condition 23 does appear to cover more ground than condition 16 and thus it imposes a greater restriction on the defendant's liberty. We are not persuaded that the imposition of condition 23 was harmless error.

### III

We AFFIRM the sentence in all respects with the exception of discretionary condition of supervised release 23, which we VACATE and REMAND for reconsideration consistent with this opinion.