In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 20-1454

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ASTON WOOD,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 19-cr-00133 — **James D. Peterson**, *Chief Judge.*

———————————

ARGUED NOVEMBER 29, 2021 — DECIDED APRIL 18, 2022

———————————

Before EASTERBROOK, SCUDDER, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Aston Wood stole money from homeowners in foreclosure by promising to provide financial services which he did not render. Wood pleaded guilty to various fraud charges and was sentenced to an above-Guidelines term of imprisonment. During sentencing and without forewarning, the district court referenced Sally Iriri, an unrelated defendant in a separate case. Wood appeals, arguing this comparison rendered his sentencing procedurally infirm and

that his sentence is substantively unreasonable. We affirm Wood's sentence.

## I. Background

Aston Wood preyed upon and defrauded homeowners facing foreclosure between September 2015 and July 2019. Using lists of homes in foreclosure, Wood solicited clients by offering to refinance or modify their mortgages so they could stay in their homes. Wood convinced his clients to make their mortgage payments payable to him or his company, assuring the homeowners he would apply the money to their loans.

In some instances, Wood convinced his clients to stall foreclosure proceedings by manipulating the bankruptcy process. Wood directed his clients to file for bankruptcy but refuse to pay the attendant filing fees or otherwise cooperate with the bankruptcy proceeding. A client's noncompliance would ultimately result in the petition's dismissal, but the intervening period allowed Wood to extract additional mortgage payments from homeowners. On October 24, 2017, this practice caused a bankruptcy judge in the Western District of Wisconsin to permanently enjoin Wood from soliciting, offering to perform, or performing services for the general public relating to mortgage foreclosures and debt relief. Wood utterly disregarded this court order and continued to engage in such practices for almost two more years.

When clients eventually lost their homes to foreclosure, Wood blamed lender malfeasance, greed, or neglect. Wood—adopting the role of negotiator, financer, or buyer—offered to help some clients repurchase their foreclosed homes. In doing so, Wood continued to solicit and receive money from these

clients on the understanding the funds would be used to re-purchase their homes.

In fact, Wood deposited his clients' money into accounts he controlled. He used the funds to cover his personal expenses, including trips to Miami and a vacation in New Orleans. All told, Wood defrauded approximately 73 victims of almost $400,000. Many were evicted from their homes.

The government indicted Wood on nine counts arising from his scheme: six counts of wire fraud, in violation of 18 U.S.C. § 1343; one count of mail fraud, in violation of 18 U.S.C. § 1341; one count of bankruptcy fraud, in violation of 18 U.S.C. § 157; and one count of criminal contempt of court, in violation of 18 U.S.C. § 401(3). Although Wood was initially released on pretrial supervision, the district court revoked his bond when the government discovered he was violating the conditions of release by contacting his victims, soliciting money for mortgage services, and discouraging his victims from cooperating with the government.

Wood ultimately pled guilty to one count of wire fraud and one count of bankruptcy fraud pursuant to a plea agreement. The presentence investigation report recommended a within-Guidelines sentence of 72 months' imprisonment based on a Guidelines range of 70 to 87 months. Wood responded with a sentencing memorandum that highlighted mitigating characteristics, such as his decision to plead guilty, his medical ailments, his age, his close family and community ties, and his ability to find and hold legitimate, gainful employment.

At sentencing, the district court adopted the facts in the presentence report and affirmed it would consider the

advisory sentencing Guidelines and the enumerated factors in 18 U.S.C. § 3553(a). The district court expressed skepticism as to the legitimacy of Wood's allocution, citing Wood's previous fraudulent crimes and the duration of the present scheme. When the district court asked Wood's counsel for an explanation for Wood's behavior, Wood's counsel replied, "I'm not sure I can really answer the question except that it was a way to make money."

After taking live testimony from several victims, the district court articulated the basis for Wood's sentence. Citing the victim impact statements, the district court emphasized the "heartlessness" of Wood's actions and the absence of mitigating explanations. Wood used a specialized skillset to "prey[] on particularly vulnerable victims," developed a relationship with them, gained "intimate knowledge" of their finances and "particular personal vulnerabilities," and abused this position of trust for his own financial gain. Although the number of victims and amount of damages were known, the district court stressed the profound, non-monetary harm Wood wrought upon his victims. Wood's victims were humiliated, lost treasured property, suffered ruined credit scores, and lost trust in institutions and in the government, while Wood's abuse of the bankruptcy process also harmed legitimate creditors. The district court characterized Wood's behavior as "relentless" based on both the duration of his scheme and his refusal to stop even after a court order. In the district court's assessment, Wood was driven purely by greed, and his last-minute expression of remorse merited "little credence."

In the district court's estimation, the Guidelines inadequately accounted for Wood's behavior and the vulnerability of his victims, so the district court decided to "vary[]

completely" from the recommended range. Shortly before an-nouncing Wood's sentence, the district court observed Wood's "crime stands apart from any financial crimes that I have had in my nearly six years on the bench." The closest comparator was a fraudulent scheme carried out by Sally Iriri, a woman the district court sentenced previously in an entirely separate case. The district court observed that Iriri was induced to commit fraud by others, whereas Wood committed his crime completely unprompted and on his own. The district court then sentenced Wood to an above-Guidelines sentence of 144 months' imprisonment and 3 years' supervised release. After discussing conditions of supervision and restitution, the district court asked, "Is there anything else I need to address today?" Wood's counsel raised some minor administrative matters, which the district court resolved before concluding the sentencing hearing.

## II. Discussion

Wood appeals his sentence on procedural and substantive grounds. Both challenges fail.

### A. Procedural Reasonableness

Wood claims the district court procedurally erred by comparing him with Iriri without forewarning, thereby relying upon inaccurate information and depriving him of the opportunity to challenge the comparison. Before reaching the merits of Wood's challenge, we must first resolve a dispute over the applicable standard of review. Wood argues he is entitled to de novo review. *See United States v. Ballard*, 12 F.4th 734, 740 (7th Cir. 2021) ("We review procedural challenges *de novo*."). The government claims plain error review applies because Wood did not raise the basis for his challenge—the

comparison with Iriri—before the district court. *See United States v. Pankow*, 884 F.3d 785, 790–91 (7th Cir. 2018) (reviewing inadequately preserved procedural challenges for plain error). The parties' dispute presents us with an opportunity to resolve an apparent tension within this Circuit's caselaw regarding what standard applies in such situations.

Federal Rule of Criminal Procedure 51 guides preservation of error. Rule 51(a) states in no uncertain terms: "[e]xceptions to rulings or orders of the court are unnecessary" to preserve a basis for appeal. Fed. R. Crim. P. 51(a). An exception is a complaint about a judicial choice, such as a ruling or an order, after it has been made. *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009). A district court's explanation of its sentencing decision, regardless of whether it precedes or follows the announcement of the sentence itself, is a ruling to which an exception is not required. *United States v. Pennington*, 908 F.3d 234, 238 (7th Cir. 2018) ("Pennington's arguments on appeal challenge the district court's explanation of its sentencing decision," which are "the kind of post-decision exceptions that Rule 51(a) provides a party need not raise to preserve her appellate rights."); *see also United States v. Farrington*, 783 F. App'x 610, 612 (7th Cir. 2019) (declining to require an exception where "[t]he contested remarks … came just moments before the judge set Farrington's 240-month prison term" because "[t]he judge had made a decision and definitively announced the sentence") (internal quotations omitted).

Rule 51(b) instructs, to preserve a claim of error, that the party must "inform[] the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and

the grounds for that objection." Fed. R. Crim. P. 51(b). However, "[i]f a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." *Id.*

In the present case, the district court compared Wood's crime with Iriri's moments before announcing Wood's sentence. After announcing the sentence, the district court asked whether there was "anything else" he needed to address. While Wood used this opportunity to remind the district court to dismiss the remaining counts, ask to be confined in Florida, and request enrollment in the RDAP program, Wood did not contest the district court's reference to Iriri. Had Wood protested the district court's comparison, would it constitute an exception under Rule 51(a) or an objection under 51(b)?

Our past decisions confess uncertainty as to which rule applies in such circumstances, citing apparent disunity between *United States v. Bartlett*, 567 F.3d 901 (7th Cir. 2009) and *United States v. Brown*, 662 F.3d 457 (7th Cir. 2011), *vacated on other grounds sub nom. Vance v. United States*, 567 U.S. 949 (2012), on the one hand, and *United States v. Courtland*, 642 F.3d 545 (7th Cir. 2011) on the other. *See United States v. Farmer*, 755 F.3d 849, 853–54 (7th Cir. 2014) (identifying tension between *Bartlett*, *Brown*, and *Courtland*); *United States v. Shannon*, 743 F.3d 496, 499–500 (7th Cir. 2014) (same); *United States v. Goodwin*, 717 F.3d 511, 522–23 (7th Cir. 2013) (same). A close reading of the cases and Rule 51 allows us to reconcile our precedent.

*Bartlett* and *Brown* involve the common case where grounds for appeal existed prior to and separate from the district court's ultimate ruling. For this category of issues, Rule 51(b) governs. Where a litigant could have presented an

argument before the district court, he must satisfy Rule 51(b) to avoid plain error review on appeal. In contrast, *Courtland* illustrates a distinct, narrow category of grounds for appeal: those created by the district court's ruling itself. These "*sua sponte*" grounds are properly analyzed under Rule 51(a). In the rare circumstance where a district court's ruling creates an entirely new ground for appeal, Rule 51(a) dictates a litigant need not take exception to preserve his appellate options. In such cases, the litigant is taken by surprise and lacks the notice or opportunity to advance a pre-ruling position. While the litigant may elect to express his concern with the district court's action—indeed, allowing the district court the chance to correct any error before an appeal may be the most sensible response—the rules do not obligate him to do so. *Bartlett*, 567 F.3d at 910 ("When the judge surprises counsel, it is far better to air and resolve the matter in the district court than to bypass available opportunities for correction and save the issue for appeal."). Litigants cannot be required to interrupt a judge mid-explanation (and risk inviting the ire of the court or being held in contempt), and post-ruling exceptions are unnecessary. Fed. R. Crim. P. 51(a).

This case, like *Courtland*, involves a "*sua sponte*" basis for appeal. The district court mentioned the Iriri sentence during its explanation of the sentence, which is a ruling. *Pennington*, 908 F.3d at 238; *Farrington*, 783 F. App'x at 612. Wood had no forewarning the district court intended to reference Iriri. Neither Wood, the government, nor the district court so much as mentioned Iriri's name in the presentence investigation report, the sentencing memorandum, or during the sentencing hearing prior to the district court's ruling. The grounds for Wood's present appeal—that the district court procedurally erred by comparing him to Iriri—were created by the district

court in the ruling itself. Wood was not obligated to take exception with the district court's ruling to preserve his argument on appeal, Fed. R. Crim. P. 51(a), so we review de novo.

It bears repeating that, while the rules certainly did not require Wood to except to the district court's ruling, practical considerations encourage such a practice. Parties who suspect error or require clarification will almost always have an opportunity to raise the issue before the district court before the proceeding concludes without interrupting the judge. Just so here. When the district court asked whether he needed to address "anything else" after announcing the sentence, Wood could have easily raised the Iriri comparison. The benefits of doing so are obvious. By identifying potential problems while still before the district court, the judge will have the benefit of addressing them in the first instance and the litigants will conserve time and resources.

The district court did not procedurally err. Wood has "a due process right to be sentenced based on accurate information." *Pennington*, 908 F.3d at 239. "A district court commits a significant procedural error in sentencing when it 'select[s] a sentence based on clearly erroneous facts.'" *United States v. Propst*, 959 F.3d 298, 302 (7th Cir. 2020) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Wood claims the district court relied upon inaccurate information when it compared him with Iriri. Yet Wood bears the burden of "show[ing] that inaccurate information was before the court and that the court relied upon it." *Pennington*, 908 F.3d at 239. Wood concedes "the specific information that the court relied upon about Ms. Iriri's case [was] not … inaccurate" but instead "incomplete." But incompleteness does not equate to inaccuracy. Wood's failure to point to any inaccurate

information the district court considered dooms this procedural challenge to his sentence.

Wood also argues the district court deprived him of the opportunity to rebut the Iriri comparison by springing it upon him at sentencing. Defendants are entitled to a "meaningful opportunity to rebut the information" that a judge considers during sentencing. *Farrington*, 783 F. App'x at 613. But "[a] procedural sentencing error is harmless if the sentence would have been the same without the error." *Id*.

Here, this Court's decision in *United States v. Farrington* is instructive. 783 F. App'x 610. When evaluating the risk of sentencing disparities under § 3553(a)(6), the district court compared Farrington "to five other defendants [it] had in similar situations" using "a little chart." *Id*. at 612. The district court did not offer any information about the five unnamed comparator defendants, and Farrington claimed procedural error on appeal. *Id*. We held any potential error was harmless because the sentencing transcript clearly indicated the district court's sentence did not "hinge[] on the comparator defendants" nor suggest the district court "would have imposed a more lenient sentence absent the claimed procedural error." *Id*. at 613.

Similarly, the transcript of Wood's sentencing reveals the district court's decision did not depend on the comparison with Iriri. The district court focused almost exclusively on Wood's individual characteristics and the particulars of his crime at sentencing. Specifically, the district court highlighted the "heartlessness" of Wood's actions, the vulnerability of his victims, Wood's "relentless" pursuit of his scheme, the significant damage wrought by Wood's crime unaccounted for by mere monetary loss, and the almost complete absence of

mitigating explanations for Wood's behavior. Indeed, the district court framed its decision to depart from the Guidelines expressly in terms of their inability to "account [for] the heartlessness of [Wood's] crime, the impact on the victims, or the relentlessness with which [Wood] pursued [his] course of action." By comparison, the district court's reference to Iriri is so limited as to flirt with irrelevance. Even supposing the comparison with Iriri constituted procedural error, it was harmless.

## B. Substantive Reasonableness

Wood argues his sentence was substantively unreasonable because the district court gave undue weight to the nature of his crimes and their impact on victims while improperly discounting mitigating circumstances. We review claims of substantive error for abuse of discretion. *Ballard*, 12 F.4th at 744. We take care not to substitute our judgment for that of the district court, which "is better situated to make individualized sentencing decisions." *United States v. Daoud*, 980 F.3d 581, 591 (7th Cir. 2020). Unless a sentence falls outside "the broad range of objectively reasonable sentences in the circumstances," reversal is inappropriate. *Id*. (internal quotations omitted).

"[S]ubstantive reasonableness occupies a range, not a point," and an above-Guideline sentence is neither presumptively nor absolutely unreasonable. *United States v. Morgan*, 987 F.3d 627, 632 (7th Cir. 2021). When examining above-Guidelines sentences, we "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *Gall*, 552 U.S. at 50; *see also Morgan*, 987 F.3d at 632. So long as the sentencing judge gives an "adequate justification" for the departure, he may "impose

a sentence above the guidelines range if he believes the range is too lenient." *Morgan*, 987 F.3d at 632 (internal quotations omitted).

The district court sentenced Wood to 144 months' imprisonment, exceeding the top of his calculated Guidelines range by approximately 66%. District courts "must consider the extent of [an upward] deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *United States v. Gonzalez*, 3 F.4th 963, 966 (7th Cir. 2021) (internal quotations omitted). As discussed above, the district court explicitly couched its decision to "vary completely" from the Guidelines based on their inability to capture the nature of Wood's crime, its impact upon his victims, and his dogged pursuit of the scheme. *See id*. at 967 ("[W]hen justifying an upward adjustment, a district judge may rely on a factor that is incorporated into the guidelines calculation[.]"). Wood argues his crime was no different from run-of-the-mill fraud schemes, rendering upward departure inappropriate.

The district court did not exceed the Guidelines based on the broad category of fraud Wood perpetrated; rather, Wood's sentence turned on the unique characteristics and qualities of his crime. That is not an abuse of discretion. *See United States v. Stinefast*, 724 F.3d 925, 932 (7th Cir. 2013) ("An above-guidelines sentence is more likely to be reasonable if it is based on factors sufficiently particularized to the individual circumstances of the case rather than factors common to offenders with like crimes.") (internal quotations omitted).

Nor did the district court improperly disregard mitigating factors in Wood's favor. The district court confirmed it reviewed and considered Wood's sentencing memorandum. Ultimately, the district court identified "little by way of

mitigating circumstances" other than Wood's decision to plead guilty. The district court's failure to enumerate Wood's other mitigation theories or articulate why they were unpersuasive is of no moment. Sentencing courts "need not mention every potential mitigating factor in detail." *Ballard*, 12 F.4th at 745. On balance, the district court simply determined other § 3553(a) factors—the nature of Wood's crime, the victims' vulnerability, the fact Wood was motivated by greed, and Wood's lack of genuine remorse—overbore any mitigating circumstance and compelled an above-Guidelines sentence. The mere fact Wood weighs these factors differently does not transform the district court's decision into an abuse of discretion. *See United States v. Lewis*, 842 F.3d 467, 478 (7th Cir. 2016) ("[T]he district court has 'discretion over how much weight to give a particular factor'" and while "[t]he district court's weighing of the § 3553 factors must fall 'within the bounds of reason,' [ ] 'those bounds are wide.'") (quoting *United States v. Boroczk*, 705 F.3d 616, 624 (7th Cir. 2013)).

## III. Conclusion

For these reasons, we affirm Wood's sentence.