In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-3287

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KOBE HENDRIX,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cr-760 — **Ronald A. Guzmán**, *Judge.*

———————————

ARGUED DECEMBER 2, 2022 — DECIDED JULY 25, 2023

———————————

Before EASTERBROOK, SCUDDER, and LEE, *Circuit Judges.*

LEE, *Circuit Judge.* After pleading guilty to one count of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1), Kobe Hendrix was sentenced to 78 months in prison, significantly more than the range of 46 to 57 months under the United States Sentencing Guidelines. Hendrix has timely appealed the sentence. Because the district court's sentence was well within its discretion, we affirm.

## I. BACKGROUND

### A. Offense, Indictment, and Guilty Plea

On the Fourth of July of 2020, Hendrix was selling marijuana out of his car in a busy commercial and residential area in Chicago. He had a loaded gun with him at the time, with a live round in the chamber. He kept it in the center console of his car, but at one point he picked it up to show to someone outside the car.

For reasons unknown, Hendrix did all of this in plain view of a police surveillance camera. He was promptly arrested, and police found the gun and $320 in cash inside his car. Hendrix also attempted to discard some marijuana while he was riding inside the squad car to the police station, which was later found.

This was not Hendrix's first run-in with the law or his first offense involving a firearm. In 2015, he was convicted of battery after he, along with two other assailants, punched and kicked a victim who was lying on the ground. And in 2017, he pleaded guilty to aggravated discharge of a firearm after he had walked into a public street and fired several shots at a passing vehicle. Hendrix was released on parole for this latter crime on September 13, 2019, about ten months before he was arrested for the instant offense.

By indictment dated October 27, 2020, Hendrix was charged with possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1), and with knowingly and intentionally possessing with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). Hendrix pleaded guilty to the felon-in-possession charge on July 14, 2021, and as part of his plea agreement, he admitted that he had knowingly and

intentionally possessed marijuana with the intent to distribute. Hendrix's total offense level was 21, and his criminal history category was III, resulting in a guidelines range of 46–57 months in prison.

## B. Sentencing

The district court conducted the sentencing hearing on November 30, 2021. At the hearing, the government requested a sentence within the guidelines range. In so doing, it argued that Hendrix's drug-trafficking activities made his firearm possession that much more dangerous. The government reasoned that guns are "tools of the drug trade," used to protect dealers from robbery. Had someone attempted to rob Hendrix, the government argued, he would have used his firearm, endangering anyone in the surrounding area.

The government contended that the risk created by Hendrix's actions was particularly grave, since he was selling drugs in broad daylight, outside an open grocery store, in a well-populated commercial and residential district. The government also noted that Hendrix had committed the instant offense a mere ten months after he had been paroled for his aggravated-discharge conviction. This short span of time, in the government's view, showed that Hendrix was "undeterred or unreformed" by the prior conviction and sentence. In the end, however, the government did not seek an above-guidelines sentence due to Hendrix's "challenging upbringing" and struggle with "mental health issues."

Defense counsel requested a sentence of time served (approximately seventeen months) with supervised release. In his view, Hendrix's activities, while illegal, were substantially harmless. He noted that Hendrix had only sold "little

amounts of marijuana." And he denied that Hendrix had had "any present plan or reason" to use his gun. He explained Hendrix's firearm possession by stating that many people in communities like the one in which Hendrix was arrested have guns for protection.

Hendrix's counsel also argued that his client was entitled to a reduced sentence due to his difficult personal history. Hendrix's mother was a sex worker and was often absent when he was growing up. She had had many boyfriends, who exposed Hendrix to drugs, violence, and abuse at an early age. As a result of these difficult circumstances, counsel argued, Hendrix has experienced severe psychological problems. He has attempted suicide on three separate occasions and has been in and out of psychiatric facilities. He has also suffered from substance abuse issues, having first consumed alcohol at eight and marijuana at fourteen.

In a personal statement to the court, Hendrix added that he had been trying to better himself and learn marketable skills. He told the court that he had recently become a father and that he wanted to be there for his son since his father had not been there for him.

When stating the sentence, the district court acknowledged the parties' arguments and Hendrix's statement and stated that it had taken into account the "presentence investigation report, the submissions of the attorneys, and the defendant's written submission." In explaining its sentence, the court began with Hendrix's mitigating factors. The court acknowledged that Hendrix had had a difficult upbringing as "one of eight children in a single-parent household," with a mother who was only occasionally present and a father who was never around. The court noted that Hendrix's family

often lacked enough money for "basic necessities" during his childhood, and it acknowledged that these difficult circumstances "undoubtedly" impacted Hendrix's personal development.

But the court found these mitigating factors to be outweighed significantly by numerous aggravating factors. It noted that, although Hendrix was only twenty-three, he had already racked up a substantial criminal history, including a prior conviction involving a firearm. The court observed that Hendrix's prior convictions and sentences had failed to deter him from further crime, given that he had been paroled from his most recent conviction less than a year before the instant offense.

The court also took issue with defense counsel's characterization of Hendrix's conduct as being "innocent." "[T]here's nothing innocent about selling drugs on the streets of the city of Chicago," the court stated. "Selling drugs is one of the factors which enables people like this defendant and others to purchase guns illegally[.]" Additionally, the court found it troubling that Hendrix, despite being unemployed and having "no visible means of support," had a car and was arrested with a large amount of cash. The court inferred from this evidence that Hendrix was making a living as a drug dealer, which it found to be an additional aggravating factor.

The district court then went on at some length about the "pandemic of gun violence" in Chicago. Because these remarks form the primary grounds of Hendrix's appeal, we recount them in full.

> Now I don't think I have to paint a detailed picture for anyone here of the pandemic of gun

violence that is going on in the city of Chicago. Murders by gun fire are at the highest they've ever been. Victims of gun fire are at a rate higher than any other prior year. The victims most of the time, it appears, are innocent people who include children and infants, infants in car seats, children playing in front of their homes. Bullets being fired through windows into people's homes while they're watching television. Hardly a day goes by that we don't see a parent or sister or a brother of someone killed by gun fire from an illegal gun, such as the one this defendant had and has previously used.

Chicago is particularly vulnerable to gun violence because of the large number of weapons that find themselves on our streets. These weapons come from many different places. Over 50 percent of the weapons recovered by the Chicago Police Department generally come from other states, states like Indiana, Missouri, Wisconsin, all of whom have very lenient gun laws.

Because of that, the number of guns on the streets of Chicago is extremely high and the amount of gun violence that follows from it is extremely high. Chicago's murder by gun fire rate is higher than that of New York or Los Angeles, both of which have significantly larger populations.

Even our expressways today find themselves to be venues for gun violence, drive-by shootings, so much so that the Illinois State Highway

Patrol has determined to reassign highway patrol officers from other areas in the state to Chicago and its surrounding[] areas because of the large increase in shootings that are occurring on our interstates, our expressways almost on a daily basis.

The Department of Justice has seen it necessary to assign task forces, special task forces to reduce gun violence in areas like Chicago, specifically targeting Chicago as one of those areas.

The amount of harm being done to the neighborhoods of the city of Chicago and the surrounding areas, to the people who are forced to live in some of the neighborhoods, forced to get up in the morning and go to work in fear, forced to drive on expressways where shootings are occurring in fear, forced to walk their children to school through special safe routes so that they won't be harmed, these things can and do cause havoc with neighborhoods and can and do result in the disintegration of—degeneration—I'm sorry—of neighborhoods as such.

Now, the guidelines are generally helpful to this court in determining the appropriate sentence in a case. But for all of the reasons I've just given and have spoken about in prior sentencings, statistics that anyone can look up, it's apparent to me that the guidelines fail to take into account the magnitude of the need to reduce the number of illegal guns on the streets of the city of Chicago and its surrounding areas. They simply

don't address what's going on in our communities today.

Ultimately, the court, after "taking into account all the factors of the defendant's background, as well as his criminal history," imposed an above-guidelines sentence of 78 months in prison.

## II. ANALYSIS

### A. Legal Standard and Standard of Review

Hendrix raises both procedural and substantive challenges to his sentence. These challenges are governed by different legal frameworks.

As to the first, a sentence may not stand if it was the product of a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [sentencing factors found at 18 U.S.C. § 3553(a)], selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). We review such procedural issues *de novo*. *United States v. Morgan*, 987 F.3d 627, 632 (7th Cir. 2021).

A sentence may also be vacated if it is substantively unreasonable, that is to say, excessively harsh. *Jackson*, 547 F.3d at 792. A guidelines-range sentence is presumptively reasonable, but an above-guidelines sentence is not presumptively *un*reasonable. *Morgan*, 987 F.3d at 632. We review a sentence's substantive reasonableness using the abuse of discretion standard. *Id.*

## B. Procedural Issues

We start with procedure. Hendrix claims that his sentence was the product of various procedural errors. None of Hendrix's arguments have merit.

### 1. § 3553(a) Factors

First, Hendrix contends that the district court did not adequately assess the 18 U.S.C. § 3553(a) factors relevant to his case. Section 3553(a) lists several factors for district courts to consider in imposing sentences in criminal cases. Consideration of these factors is "mandatory." *Jackson*, 547 F.3d at 792.

Not only must a district court consider the § 3553(a) factors, but it must adequately explain its sentence with reference to these factors. *United States v. Robinson*, 829 F.3d 878, 880 (7th Cir. 2016). That said, the burden of explanation on the district court "is not particularly onerous." *United States v. Steele*, No. 21-2740, 2022 WL 3334533, at *3 (7th Cir. Aug. 12, 2022) (non-precedential) (quoting *Morgan*, 987 F.3d at 632). All we require is that the district court "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. Kuczora*, 910 F.3d 904, 907 (7th Cir. 2018) (quoting *Gall*, 552 U.S. at 50). And, indeed, the district court need not recite and apply every single § 3553(a) factor, so long as the record indicates that the district court considered the sentencing factors *in toto* and created an adequate record for review. *United States v. Dawson*, 980 F.3d 1156, 1164–65 (7th Cir. 2020) (stating that the factors need not be applied in "check-list form"); *United States v. Patel*, 921 F.3d 663, 671 (7th Cir. 2019) (stating that district courts need only consider the factors and

provide a reviewable record, and that they do not need to reach an express conclusion regarding every factor).

This is so even where, as here, the district court imposes an above-guidelines sentence. It is enough that the court considers the § 3553(a) factors and articulates why its sentence is appropriate on a reviewable record. It may, but need not, explain why a guidelines sentence would be insufficient. *United States v. Bartlett*, 567 F.3d 901, 909 (7th Cir. 2009).

Under these standards, the district court's explanation of Hendrix's sentence was more than adequate. The court discussed and applied multiple § 3553(a) factors in detail. For instance, the court carefully considered Hendrix's personal "history and characteristics." 18 U.S.C. § 3553(a)(1). It found that this factor was mitigating in some respects, but aggravating in others. The court noted Hendrix's "difficult childhood" in an impoverished single-parent home, and it concluded that Hendrix's situation "undoubtedly affected" his "development as a human being and as an adult." But the court considered it an aggravating factor that Hendrix had a lengthy criminal history at just twenty-three years of age.

The court also discussed the "nature and circumstances of the offense." *Id.* The court found Hendrix's conduct to be serious because Hendrix had possessed a firearm in connection with drug trafficking and had a prior firearms conviction. As to other factors, the court reasoned that a heavy sentence was necessary to deter illegal gun possession generally and to deter further crimes by Hendrix specifically (since this was his third offense and second firearms offense). *Id.* § 3553(a)(2)(A)–(C) (stating that a sentence should "reflect the seriousness of the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the

defendant"). And the court recommended that Hendrix be placed in a drug-abuse treatment program. *Id.* § 3553(a)(2)(D) (stating that a sentence should "provide the defendant with needed … medical care[] or other correctional treatment"). In short, the district court provided a thorough explanation for its sentence, applying various § 3553(a) factors along the way.

Hendrix insists that the court did not give meaningful consideration to "all" the § 3553(a) factors. But the court was not required to walk through each factor in a robotic, check-list fashion, *Dawson*, 980 F.3d at 1164–65, and Hendrix does not point to any especially relevant factor that the court failed to consider. Hendrix's real problem with the district court's discussion is that, in his view, the court relied too much on some factors and too little on others. For instance, Hendrix contends that the court placed too much emphasis on deterrence and did not pay sufficient attention to his traumatic personal history. But disagreement as to how a court *weighs* the § 3553(a) factors cannot support a claim of procedural error. *United States v. Volpendesto*, 746 F.3d 273, 298 (7th Cir. 2014). It is apparent that the district court considered Hendrix's personal history and characteristics, even if it did not weigh that factor in Hendrix's favor as much as he would have liked.

Hendrix also complains that the district court held his young age against him, when it should have viewed it as a mitigating factor. But, again, this is a challenge to the district court's weighing of the evidence. In short, Hendrix has not identified any reversible procedural error in the court's discussion of the § 3553(a) factors.

## 2. Arguments in Mitigation

Next, Hendrix argues that the district court did not give adequate consideration to his key mitigation arguments. A district court commits procedural error when it fails to address a defendant's mitigating arguments that are not "so weak as not to merit discussion." *Steele*, 2022 WL 3334533, at *3 (quoting *United States v. Sanchez*, 989 F.3d 523, 540 (7th Cir. 2021)). As with the § 3553(a) factors, the burden we impose on district courts here is not a heavy one. We will not find procedural error so long as "the totality of the record establishes that the district court considered the arguments in mitigation, even if implicitly and imprecisely." *Id.* (quoting *United States v. Bour*, 804 F.3d 880, 885 (7th Cir. 2015)); *Robinson*, 829 F.3d at 881 ("[T]he court 'is not obliged to engage in a lengthy discussion of every argument for leniency that the defendant raises.'") (quoting *United States v. Patrick*, 707 F.3d 815, 818 (7th Cir. 2013)).

Hendrix points to several mitigating circumstances that, he believes, the district court failed to consider, including his "early childhood trauma, history of mental illness, lifelong struggle with suicide, his genuine show of remorse, the nonviolent nature of the offense, and the significant change in his family status as his first child was born while he was incarcerated."

Turning first to Hendrix's "early childhood trauma, history of mental illness, [and] lifelong struggle with suicide," the district court acknowledged these circumstances, recognizing that Hendrix's difficult upbringing "undoubtedly affected [his] development as a human being and as an adult." Admittedly, the court never incanted specific terms like "childhood trauma," "mental illness," or "suicide," but the

record indicates that the court considered Hendrix's personal history and trauma when fashioning its sentence.

Second, having apologized for his actions at sentencing, Hendrix contends that the district court should have explicitly acknowledged his remorse. But, as we have said elsewhere, remorse is among the "stock" arguments common to most defendants that a district court may, but is not required to, address expressly. *United States v. Chapman*, 694 F.3d 908, 916 (7th Cir. 2012). We find no error in the district court's passing over it here.

Third, Hendrix emphasizes the "non-violent nature of the offense." While it is true that Hendrix did not physically harm anyone, the district court found his offense to be serious nonetheless because of his criminal history and possession of a firearm in connection with drug trafficking. Because the court considered Hendrix's arguments regarding the severity of his offense, no procedural error occurred. *United States v. Trujillo-Castillon*, 692 F.3d 575, 578 (7th Cir. 2012) (finding no procedural error where court considered mitigating argument "but simply assigned it lesser weight than the defendant would have liked").

Lastly, Hendrix believes that the district court should have explicitly mentioned the birth of his son. "[A] defendant's family circumstances may be a legitimate basis for a below-guidelines sentence if the district court finds 'that a defendant's family ties and responsibilities … are so unusual that they may be characterized as extraordinary.'" *United States v. Graham*, 915 F.3d 456, 459 (7th Cir. 2019) (quoting *United States v. Schroeder*, 536 F.3d 746, 755–56 (7th Cir. 2008)). But the mere fact that a defendant has a family, without more, is not "enough to warrant specific discussion." *Id.* at 459–60.

Hendrix offers no indication that his family situation was so unique as to merit particular attention in the district court's sentencing analysis.[1]

### 3.  Comments About Gun Violence in Chicago

Turning, finally, to Hendrix's main argument, Hendrix contends that his sentence was tainted by the district court's lengthy commentary on the general prevalence of gun violence in Chicago. A district court commits procedural error when it makes "extraneous and inflammatory comments during the sentencing hearing" that cast "doubt on the validity of the sentence" imposed. *Robinson*, 829 F.3d at 880 (quoting *United States v. Figueroa*, 622 F.3d 739, 741 (7th Cir. 2010)). For instance, we have said that a district court should not "blame" the defendant for "issues of broad local, national, and international scope that only tangentially relate to his underlying conduct." *United States v. Smith*, 400 F. App'x 96, 99 (7th Cir. 2010) (non-precedential) (citing *Figueroa*, 622 F.3d at 743–44).

On the other hand, district courts may consider locality-based factors in gauging the impact a particular offense has on the community in which it was committed, and these factors may inform a court's decision to impose an above-

---

[1] In a different section of his brief, Hendrix identifies more potentially mitigating arguments. He notes that he has been studying and hopes to find a job after his release from prison, that he has been a "positive influence" while in custody, that he has sought mental health counseling, and that he stays in touch with his family. To the extent Hendrix argues that the district court committed procedural error in failing to address these mitigating circumstances, the arguments are unfounded. None of these arguments, when viewed in the context of this record, are so noteworthy, unique, or compelling that the district court was required to discuss them individually. *Chapman*, 694 F.3d at 916.

guidelines sentence. *United States v. Hatch*, 909 F.3d 872, 875 (7th Cir. 2018). In keeping with this principle, we repeatedly have held that district courts may consider the serious problem of gun violence in Chicago in imposing stiff sentences on those who commit firearms offenses in the city. *See id.* (affirming above-guidelines sentence); *United States v. Johnson*, No. 21-2553, 2022 WL 703889, at *3 (7th Cir. Mar. 9, 2022) (non-precedential) (same); *Steele*, 2022 WL 3334533, at *3 (same); *United States v. Irving*, No. 22-1258, 2022 WL 17576552, at *3 (non-precedential) (7th Cir. Dec. 6, 2022) (same); *United States v. Austin*, 760 F. App'x 456, 458–59 (7th Cir. 2019) (non-precedential) (substantially affirming within-guidelines sentence). There is no reason for us to deviate from those holdings here.

For his part, Hendrix attacks the district court's analysis on numerous grounds, but none are persuasive. Principally, he contends that the court's discussion raised circumstances irrelevant to the case at hand. For instance, Hendrix points out that the district court mentioned gun deaths, even though no one died in this case. Similarly, Hendrix faults the court for discussing shootings of children, shootings of people watching television in their homes, and shootings on expressways: obviously, none of those things happened here. But we have never demanded an exact correspondence between locality-based factors and the facts of a particular case; a reasonable nexus is enough. *See United States v. Saldana-Gonzalez*, 70 F.4th 981, 984–85 (7th Cir. 2023). And, here, the court's comments focused on the scourge of gun violence in Chicago, which is plainly relevant to Hendrix's illegal possession of a gun in Chicago. *See Hatch*, 909 F.3d at 874 (affirming sentence in which district court discussed shootings of children, even though defendant had been convicted only of gun trafficking).

Next, Hendrix argues that some of the district court's comments were substantively inaccurate. A defendant has a due process right to be sentenced "based on accurate information." *United States v. Sanchez*, 989 F.3d 523, 546 (7th Cir. 2021) (quoting *United States v. Propst*, 959 F.3d 298, 304 (7th Cir. 2020)). To prove a violation of this right, the defendant must show that the court actually relied on inaccurate information in imposing a sentence. *Id.* Hendrix asserts that the district court wrongly stated that a majority of gun-violence victims in Chicago are children. But the district court never said this; rather, it stated that most victims are "innocent people who *include* children and infants" (emphasis added).

Hendrix identifies some more alleged inaccuracies for the first time in his reply brief: for instance, he disagrees with the district court's assertion that "[v]ictims of gun fire are at a rate higher than in any prior year." But Hendrix waived these additional points by failing to include them in his opening brief. *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("[A]rguments raised for the first time in [a] reply brief are waived because they leave no chance to respond."). And even if the district court did make some factual misstatements, Hendrix has not attempted to show that it actually relied on any inaccurate information in imposing sentence. The main point the district court was making in its discussion of locality-based factors was that gun violence is a serious problem in Chicago, a premise Hendrix has not disputed. It was this overarching reality, rather than any particular data point, that drove the court toward an above-guidelines sentence.

Finally, Hendrix argues that he was not given a chance to respond to the district court's discussion of gun violence at the sentencing hearing because the court did not alert the

parties beforehand that it would be considering such information. "Defendants are entitled to a 'meaningful opportunity to rebut the information' that a judge considers during sentencing." *United States v. Wood*, 31 F.4th 593, 599 (7th Cir. 2022) (quoting *United States v. Farrington*, 783 F. App'x 610, 612 (7th Cir. 2019)). Given the government's discussion of Chicago's "ongoing gun violence epidemic" and supporting statistics in its sentencing memorandum, whether Hendrix had adequate notice that this issue would come up at sentencing is an open question. But, assuming that Hendrix is correct, the most he could have done at sentencing (as he does on appeal) would have been to suggest that the district court's discussion of gun violence was overstated in some respects. Hendrix could not have reasonably disputed the basic premise that gun violence is a serious problem in the city. And, even if Hendrix had drawn the court's attention to some favorable statistics, the court also relied on Hendrix's criminal history, as well as the court's own observations about gun violence, in crafting the sentence. On this record we do not see a realistic prospect that the court would have imposed a different sentence. *See id.* (noting that "[a] procedural sentencing error is harmless if the sentence would have been the same without the error").[2]

---

[2] Hendrix also seems to suggest that the district court erred in failing to cite specific sources in support of its observations about gun violence. But district courts need not use "formal statistics" in discussing gun violence at sentencing, and judges may apply their own "personal experience" in tandem with empirical observations. *Austin*, 760 F. App'x at 458–59. We see no basis in our case law for requiring district courts to provide full citations on the record in support of such discussions.

In short, we find no procedural error in the district court's discussion of the prevalence of gun violence in Chicago at sentencing.

## C. Substantive Reasonableness

Finally, Hendrix argues that his sentence was substantively unreasonable. Again, we review the substantive reasonableness of a sentence for abuse of discretion, and we will not presume a sentence to be unreasonable merely because it exceeds the guidelines range. *Morgan*, 987 F.3d at 632. Nor will we substitute our sentencing judgment for that of the district court, which heard the evidence and the parties' arguments firsthand and is in the best position to impose an appropriate sentence. *United States v. Porraz*, 943 F.3d 1099, 1104 (7th Cir. 2019).

When a district court departs from the guidelines range, we "take the degree of variance into account and consider the extent of [the] deviation," requiring more of an explanation the greater the deviation. *United States v. Gonzalez*, 3 F.4th 963, 966 (7th Cir. 2021) (quoting *Gall*, 552 U.S. at 47). In explaining the deviation, however, the district court may rely on the § 3553(a) factors alone and need not justify its sentence vis-a-vis the guidelines range. *Id.*

Here, Hendrix contends that the district court's sentence was unreasonable because it was based solely on general deterrence and community-based factors, rather than any individualized considerations. This is simply not the case. As described above, the district court considered and applied numerous § 3553(a) factors, including Hendrix's personal history and characteristics, the nature of his offense, and his recent criminal history. The court explained that specific and

general deterrence had motivated it to depart from the guidelines range, given that Hendrix's first firearms conviction had not deterred him from criminal conduct and tough sentences were needed to crack down on gun crime in Chicago. These were permissible justifications for the sentence imposed. The court was entitled to deviate from the Guidelines based on its "own penal theory" and to consider locality-based factors in doing so. *Hatch*, 909 F.3d at 875. Because the court's sentence was "firmly grounded" in the § 3553(a) factors and the court reasonably justified its sentence, the sentence was substantively sound and not an abuse of discretion. *Gonzalez*, 3 F.4th at 966.

Hendrix also suggests that his offense was not serious, and that his mitigating circumstances, including his traumatic upbringing, required a lighter sentence. But the district court reasonably found otherwise. Given Hendrix's criminal history, his possession of a firearm in connection with drug trafficking, the severity of gun violence in Chicago, and other factors, it was not an abuse of discretion for the court to conclude that an above-guidelines sentence was warranted. We decline to second-guess the district court's weighing of the information at its disposal, a task committed to its sound discretion. *Wood*, 31 F.4th at 600. Thus, we conclude that the sentence was substantively reasonable.[3]

---

[3] Hendrix raises some additional arguments in his briefing, but none merit substantial discussion. For one, Hendrix attempts, unsuccessfully, to analogize this case to *United States v. Omole*, 383 F. App'x 571 (7th Cir. 2010). There, the district court expressed at sentencing that it felt a below-guidelines sentence would be appropriate, but it imposed a guidelines sentence because it "felt constrained" by our remand of its previous

## III.  CONCLUSION

We have considered Hendrix's remaining arguments, and none have merit. For the reasons stated above, we AFFIRM the sentence imposed by the district court.

---

sentence as unreasonably lenient. *Id.* at 572. We vacated the district court's sentence again, reasoning that it was not consistent with its stated "rationale for imposing a lower sentence." *Id.* at 573. Here, however, there is no inconsistency between the district court's comments and the above-guidelines sentence it imposed.

Hendrix also contends that the government's request for a guidelines-range sentence at the sentencing hearing "cannot be harmonized" with its defense of the district court's above-guidelines sentence on appeal. We see no inconsistency. Even if the government believes that Hendrix should have received a lighter sentence, that does not mean it also must believe that the district court's sentence was procedurally or substantively unreasonable.