In the

# United States Court of Appeals
## for the Seventh Circuit

No. 21-2081

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANDREW J. JOHNSTON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 CR 517-1 — **Rebecca R. Pallmeyer**, *Judge.*

ARGUED MARCH 29, 2023 — DECIDED OCTOBER 29, 2025

Before BRENNAN, *Chief Judge*, and ROVNER and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Andrew Johnston is a recidivist bank robber and repetitive filer of frivolous motions, appeals, and satellite litigation challenging his most recent criminal conviction and sentence. The judgment was entered in early 2019 after a jury convicted him of attempted bank robbery and the district court sentenced him to 168 months in prison.

While awaiting transfer from Chicago's Metropolitan Correctional Center to federal prison to serve his sentence, Johnston heard a rumor that a fellow inmate—a high-ranking member of the Sinaloa Cartel—had ordered a hit on another inmate. Johnston reported this information to authorities and assisted them by recording a conversation with the cartel leader. He also testified at the cartel leader's sentencing hearing, but the district judge in that case declined to credit his testimony. The judge did, however, consider the recorded conversation when imposing sentence on the cartel leader.

In return for this assistance, the government moved for a 25% reduction in Johnston's sentence under Rule 35(b) of the Federal Rules of Criminal Procedure. The rule permits the district court to reduce an offender's sentence based on his "substantial assistance in investigating or prosecuting another person"—but only on "the government's motion made within one year of sentencing." FED. R. CRIM. P. 35(b)(1). The government's motion was quite late: it was filed in April 2021, more than two years after Johnston was sentenced. The time limit has some exceptions, *see id.* R. 35(b)(2), but none applied.

The government took the position that the deadline is waivable and expressly waived it, so the judge in Johnston's case addressed the motion on the merits. She agreed that his help was useful (if only partially so) and that postsentencing cooperation sometimes supports an inference of genuine acceptance of responsibility. But the inference was weakened in Johnston's case by his repeated frivolous challenges to his conviction and sentence. Because of this vexatious litigation conduct,    the    judge    determined    that    he    had    not

acknowledged responsibility. She reduced his sentence to 151 months—a 10% reduction rather than the 25% requested by the government.

Johnston appealed, challenging the 10% reduction as too small. His primary argument is that the judge improperly considered his postconviction litigation conduct.

Our first question, however, concerns the district court's jurisdiction to consider the untimely Rule 35(b) motion. In *United States v. McDowell*, 117 F.3d 974 (7th Cir. 1997), we held that the one-year time limit in Rule 35(b)(1) is jurisdictional. That was before the Supreme Court's more recent line of cases clarifying the distinction between jurisdictional and nonjurisdictional procedural requirements. More to the point here, the Court has held that time limits in court-made rules are *not* jurisdictional. *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 19 (2017). *Hamer* has displaced our decision in *McDowell*, which means that the one-year time limit in Rule 35(b)(1) is a nonjurisdictional claim-processing rule, enforceable if properly raised but waived if not. The judge was right to consider the merits of the motion.

Still, our review of her decision is narrow: we may review only whether the sentence "was imposed in violation of law." 18 U.S.C. § 3742(a). No legal rule barred the judge from considering Johnston's frivolous litigation conduct. Whether that conduct deserved the weight she attributed to it is an unreviewable discretionary determination. We affirm.

## I. Background

Johnston has a long history of bank robberies. Before the conviction at issue here, he had served short terms in federal prison for earlier bank-robbery sprees in 2008 and 2013. He

returned to this pattern soon after completing his sentence on the 2013 judgment. In July 2017, just a few months after his release from prison, he entered a bank in suburban Chicago, threatened a teller, and attempted a robbery. He was unsuccessful and was quickly caught and indicted for attempted bank robbery.

Protracted pretrial proceedings followed. Early in the case, Johnston rejected the assistance of appointed counsel and asked the judge for permission to represent himself. The judge granted his request, permitted counsel to withdraw, and appointed standby counsel. Johnston then peppered the court with numerous frivolous motions, frequently followed by frivolous interlocutory appeals when the motions were denied. In January 2019 the case proceeded to a two-day trial. The jury found Johnston guilty after just 90 minutes of deliberation. On April 4 the judge sentenced him to 168 months in prison.

While awaiting transfer to his designated prison, Johnston was detained at Chicago's Metropolitan Correctional Center ("MCC"). There he acquired a reputation as a jailhouse lawyer and assisted fellow inmate Jesus Raul Beltran Leon with some legal matters. Beltran was a high-ranking member of the Sinaloa Cartel, serving as a lieutenant to Ivan and Jesus Alfredo Guzman, sons of the former cartel kingpin Joaquin Guzman Loera ("El Chapo"). Beltran was detained at MCC pending trial on federal charges for his involvement in facilitating the cartel's drug-distribution and money-laundering activities.

In late April Johnston heard from another MCC inmate that Beltran had put out a bounty on Damaso Lopez Serrano, another high-ranking member of the Sinaloa Cartel. Lopez

was also in federal custody on drug-trafficking charges and was cooperating with the government; he had been transferred to MCC for possible testimony at Beltran's trial. Johnston called his girlfriend and asked her to pass the rumor about the hit to MCC staff. Soon after, Johnston began cooperating with federal law-enforcement officials to investigate the matter. He agreed to wear a wire and record a conversation with Beltran. The recording was cut short for reasons outside his control, but it did capture Beltran seemingly acknowledging that he had offered to pay $25,000 to anyone who would assault Lopez.

The government later presented Johnston as a witness at Beltran's sentencing hearing to support its request for a Sentencing Guidelines enhancement for obstruction of justice. The recorded conversation was also admitted. The judge presiding in Beltran's case declined to credit Johnston's testimony and denied the government's request for the obstruction enhancement. He did, however, rely on the information captured on the recording when evaluating Beltran's mitigation arguments and the sentencing factors in 18 U.S.C. § 3553(a).

Johnston was not immediately rewarded for his help in Beltran's case. In the interim, we affirmed his conviction and sentence in May 2020. In July he wrote to the government seeking a 66% sentence reduction as a reward for his assistance in the Beltran prosecution. After some time passed, the government assured Johnston that it would follow up. Meanwhile, Johnston continued to file numerous frivolous motions, lawsuits, and appeals challenging his conviction and sentence in various respects.

In February 2021 the government notified Johnston that it would seek a 25% sentence reduction under Rule 35(b) in recognition of his assistance. Johnston was not satisfied and sued the United States Attorney's Office for the Northern District of Illinois under the Administrative Procedure Act seeking an injunction requiring the government to move the court to reduce his sentence by 50% or more. The suit was soon dismissed; the judge explained that an APA suit is not the right way to seek a reduction of a criminal sentence.

Johnston followed up with a motion in his criminal case asking the court to compel the government to move for at least a 50% sentence reduction. He also moved to reassign his case to a new judge. He insisted that Judge Pallmeyer, who had presided at trial and sentenced him, was conflicted based on a separate lawsuit he had filed against her and her court reporter. That suit was quickly dismissed, but Johnston's appeal was then pending before this court.

A few days later—on April 12, 2021—the government filed a motion under Rule 35(b)(1) seeking a 25% reduction in Johnston's sentence based on his assistance in the Beltran case. As we've noted, the motion was not filed within one year of sentencing as the rule requires. Indeed, the deadline had expired more than a year earlier. The government maintained that it could waive the time limit and did so.

In a written order issued on May 28, the judge denied Johnston's motion to reassign the case and struck his motion to compel as unnecessary because the government had filed a Rule 35(b) motion. Turning to the substance of that motion, the judge acknowledged that Johnston's cooperation was "unquestionably useful to the government" and that "cooperation is to be encouraged." She also noted that

postconviction assistance to law enforcement "is often a sign of acceptance of one's own responsibility for wrongdoing." But the judge explained that she could not draw the favorable inference in Johnston's case because he had not, in fact, acknowledged any of his own wrongdoing. Quite the contrary. As the judge explained, Johnston had filed many baseless actions and appeals challenging his conviction "in one form or another"—suing the judge and her court reporter, prosecutors, a telephone-service provider, and various state and federal law-enforcement officials.[1] And he continued his pattern of flooding the trial and appellate courts with frivolous motions and petitions.

Accordingly, based on the § 3553(a) sentencing factors, the judge concluded that a 25% sentence reduction was unwarranted and instead reduced Johnston's sentence by

---

[1] Johnston's many court filings included a RICO claim against Judge Pallmeyer, *Johnston v. Pallmeyer*, No. 18-cv-05651 (N.D. Ill. Aug. 16, 2018); a *Bivens* claim against the judge and her court reporter, *Johnston v. Ward*, No. 20-cv-07247 (N.D. Ill. Nov. 20, 2020); a conversion claim against AT&T, *Johnston v. AT&T Corp.*, No. 18-cv-06060 (N.D. Ill. Sept. 4, 2018); a replevin action against the United States, *Johnston v. United States*, No. 20-cv-03729 (N.D. Ill. June 19, 2020); a § 1983 claim against a police officer involved in his arrest, *Johnston v. DeVries*, No. 17-cv-06183, 2021 WL 3930298 (N.D. Ill. Sept. 2, 2021); and a RICO claim against the FBI agents who investigated the robbery, *Johnston v. Hoogland*, No. 20-cv-07814 (N.D. Ill. Dec. 30, 2020). He also filed multiple frivolous appeals in connection with these actions. Indeed, in our order denying his petition for a writ of mandamus in one of these cases, we warned him "for a third time" that additional frivolous filings may result in the imposition of sanctions and a filing bar. Order, *United States v. Johnston*, No. 19-3376 (7th Cir. Dec. 13, 2019), ECF No. 4. He did not heed that warning. In dismissing a later frivolous appeal, we imposed sanctions against him. *Johnston v. Ward*, No. 21-1221, 2021 WL 4894487, at *1 (7th Cir. Oct. 20, 2021).

10% to 151 months. Her decision was based largely on Johnston's failure to accept any responsibility for his own wrongdoing and his "continued lack of remorse," as reflected in his repetitive frivolous postconviction litigation.

Johnston appealed, arguing in his pro se brief that his assistance to the government merited at least a 50% reduction and challenging the judge's refusal to reassign the case to another judge. After our initial review of the case, we struck the briefs and appointed counsel for Johnston on appeal.[2] We also asked the parties to address the district court's jurisdiction to hear the government's untimely Rule 35(b) motion. More specifically, we directed the parties to address the effect of the Supreme Court's decision in *Hamer* on our 1997 decision in *McDowell*, which held that the one-year time limit in the rule is jurisdictional. Anticipating that the parties would agree that the time limit in Rule 35(b)(1) is nonjurisdictional and therefore waivable, we appointed an amicus curiae to brief any good-faith arguments that *McDowell* remains good law after *Hamer*.[3]

## II. Discussion

With the assistance of counsel on appeal, Johnston has dropped his claim that the judge had a conflict of interest, and he no longer presses his argument for a 50% sentence reduction. He challenges only the judge's refusal to award a

---

[2] Attorney Joseph P. Falvey of Jones Day accepted the appointment and has ably discharged his duties. We thank him for his assistance to his client and the court.

[3] Attorney Brent T. Murphy of Latham & Watkins LLP accepted the appointment and has ably discharged this responsibility. We thank him for his assistance to the court.

25% sentence reduction as requested by the government. Before turning to this argument, we first address the district court's jurisdiction to entertain the government's untimely Rule 35(b) motion.

Once imposed, a federal prison sentence is final and may be modified only in limited circumstances. The sentencing statute provides that a final sentence of imprisonment may be modified only as "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582(c)(1)(B). Rule 35 permits the court to reduce a sentence based on the defendant's substantial assistance to the government, but only on the government's motion and within certain time and substantive limits. More specifically, the rule provides that "[u]pon the government's motion *made within one year of sentencing*, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." FED. R. CRIM. P. 35(b)(1) (emphasis added).

The rule permits certain motions filed after the one-year time limit, but only in limited circumstances: "Upon the government's motion *made more than one year after sentencing*, the court may reduce a sentence if the defendant's substantial assistance involved … information not known to the defendant until one year or more after sentencing"; information that "did not become useful to the government until more than one year after sentencing"; or "information the usefulness of which could not reasonably have been anticipated by the defendant until more than one year after sentencing." *Id.* R. 35(b)(2) (emphasis added).

In Johnston's case the government missed the deadline by more than a year, and no exception applies. Almost 30 years

ago, we held that the time limit is a jurisdictional bar and thus cannot be waived. *McDowell*, 117 F.3d at 978–80. If *McDowell* controls, we must vacate the order modifying Johnston's sentence.

As noted, we asked the parties and amicus to address whether our decision in *McDowell* has survived the Supreme Court's more recent caselaw clarifying the line between jurisdictional and nonjurisdictional procedural requirements—including time limits like the one in Rule 35(b)(1). They have done so. We now hold that *McDowell* has been displaced by the Court's decision in *Hamer*.

To begin, for almost two decades now, the Court has sought to curtail the too-frequent tendency to classify procedural requirements as jurisdictional. To that end, the Court has highlighted "the distinction between jurisdictional prescriptions and nonjurisdictional claim-processing rules." *Fort Bend County v. Davis*, 587 U.S. 541, 548 (2019). The jurisdictional label, the Court has explained, is "generally reserved for prescriptions delineating the classes of cases a court may entertain (subject-matter jurisdiction) and the persons over whom the court may exercise adjudicatory authority (personal jurisdiction)." *Id.* Claim-processing rules, on the other hand, are more common and include an array of procedural requirements and preconditions to relief that "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id.* at 548–49 (quotation marks omitted).

"A claim-processing rule may be mandatory in the sense that a court must enforce the rule if a party properly raise[s] it," *id.* at 549 (alteration in original) (quotation marks omitted), but it can be waived or forfeited, *Hamer*, 583 U.S. at 20.

A jurisdictional rule, in contrast, "cannot be waived or forfeited, must be raised by courts *sua sponte*, and … do[es] not allow for equitable exceptions." *Boechler, P.C. v. Comm'r*, 596 U.S. 199, 203 (2022). Because such "[h]arsh consequences attend the jurisdictional brand," *Fort Bend County*, 587 U.S. at 548 (quotation marks omitted), the Court has lately concerned itself with demarcating the line between true jurisdictional limits and waivable claim-processing rules. *See, e.g.*, *Riley v. Bondi*, 145 S. Ct. 2190 (2025) (30-day deadline to file a petition for review of a BIA order, 8 U.S.C. § 1252(b)(1)); *Harrow v. Dep't of Defense*, 601 U.S. 480 (2024) (60-day deadline to appeal to the Federal Circuit, 5 U.S.C. § 7703(b)(1)); *Boechler*, 596 U.S. 199 (30-day deadline to file a petition for review in the Tax Court, 26 U.S.C. § 6330(d)(1)).

For our purposes, the most relevant decision in this line of cases is *Hamer*. There the Court emphasized that Congress is the relevant actor when it comes to the jurisdiction of the federal courts, bluntly reminding us that "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction." *Hamer*, 583 U.S. at 19 (quotation marks omitted). A corollary of this fundamental principle is that "[a] time limit not prescribed by Congress ranks as a mandatory claim-processing rule." *Id.* Accordingly, "a time limit prescribed only in a court-made rule … is not jurisdictional; it is, instead, a mandatory claim-processing rule." *Id.* As the Court explained in *Hamer*, this limitation—rooted in the allocation of authority in our constitutional system—has sometimes been overlooked. *Id.*

Indeed, we overlooked this principle in *McDowell*. Our holding there—that the one-year time limit in Rule 35(b) is jurisdictional—cannot be reconciled with *Hamer*. *McDowell*

relied on earlier opinions from our court and other circuits adopting jurisdictional interpretations of previous versions of Rule 35. 117 F.3d at 978. We noted as well that the district courts had lacked the power to revisit a sentence before the Federal Rules were adopted, and we also pointed to Rule 45 of the Federal Rules of Criminal Procedure, which includes Rule 35 among the time limits that may not be extended. *Id.* at 979. We closed with a practical consideration, noting that the government's ability to waive the time limit "would render the deadline ineffectual" because neither the government nor the defendant would challenge a tardy motion; we found it "difficult to conceive of a regime under which it would be the responsibility of the parties to monitor the government's compliance with Rule 35(b)." *Id.* at 979–80.

Absent from this analysis is an acknowledgement of Congress's exclusive role in delineating the subject-matter jurisdiction of the lower federal courts. The Court's recent cases have reminded us of the primacy of this principle. *Hamer* is particularly relevant, holding in unequivocal terms that time limits in court-made rules are not jurisdictional, displacing our decision in *McDowell*.

The amicus identifies a path to continuing to classify the rule's one-year time limit as jurisdictional, as we did in *McDowell*. The argument centers on § 3582(c)(1)(B), which cross-references Rule 35. As relevant here, that subsection provides that "[t]he court may not modify a term of imprisonment once it has been imposed except that … the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." § 3582(c)(1)(B).

The general cross-reference to Rule 35 in § 3582(c)(1)(B) is not alone enough to confer jurisdictional significance on the rule's time limit or any of its other conditions for relief. Moreover, we've rejected a jurisdictional reading of § 3582(c) in a case involving an adjacent subsection of the statute. In *United States v. Taylor*, 778 F.3d 667 (7th Cir. 2015), we considered whether the sentence-modification criteria in § 3582(c)(2) are jurisdictional in nature. That part of the statute permits the court to modify a sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." § 3582(c)(2).

*Taylor* noted, as we have here, that the Supreme Court has "taken new care" to observe the line between true jurisdictional prescriptions and nonjurisdictional case-processing rules, emphasizing that limits on the court's power are "ultimately up to Congress." 778 F.3d at 670. Accordingly, we looked for cues in the statute's language and structure, noting that "§ 3582 is not part of a jurisdictional portion of the criminal code[,] … [n]or is subsection (c) phrased in jurisdictional terms." *Id.* at 671. Lacking any signal from Congress that the eligibility criteria in subsection (c)(2) mark the boundaries of the court's jurisdiction, we concluded that "the limits on § 3582(c)(2) relief are not jurisdictional." *Id.* We accordingly clarified that the "district courts have subject-matter jurisdiction over—that is, the power to adjudicate—a § 3582(c)(2) motion even when authority to *grant* a motion is absent because the statutory criteria [have] not [been] met." *Id.* at 670.

Our analysis in *Taylor* applies with equal force here. And it forecloses any argument that the simple cross-reference to

Rule 35 in § 3582(c)(1)(B) is enough, by itself, to confer jurisdictional status on the one-year time limit in the rule.

Accordingly, we conclude that *McDowell* is no longer good law: the Court's decisions in *Hamer* and other recent cases have effectively overruled it. We hold that Rule 35(b)'s one-year time limit is a nonjurisdictional claim-processing rule and may be waived.

Turning to Johnston's arguments on the merits, we note first that § 3742 narrowly circumscribes our review of the judge's Rule 35(b) ruling. *United States v. Chapman*, 532 F.3d 625, 628 (7th Cir. 2008). As relevant here, the statute limits us to assessing whether "the sentence … was imposed in violation of law." § 3742(a)(1).[4] Arguments about the judge's discretionary determinations are outside the statutory scope of review. *United States v. McGee*, 508 F.3d 442, 444 (7th Cir. 2007) (per curiam) (explaining that § 3742(a) "does not authorize an appeal from a Rule 35(b) decision if the only contention is that the district court did not exercise its discretion more favorably to the defendant").

Johnston's counseled brief focuses on the judge's consideration of his postconviction litigation conduct. Much of this argument—namely, that the judge wrongly concluded that a 25% sentence reduction was unwarranted based on Johnston's frivolous, repetitive, and vexatious postconviction litigation—challenges the judge's discretionary judgments, which are unreviewable under § 3742(a). Johnston does, however, frame one reviewable claim of legal error: he argues that it was unlawful for the judge to consider his

---

[4] Section § 3742(a) includes three other grounds of review; none is relevant here.

litigation conduct *at all* in ruling on the government's Rule 35(b) motion.

But he has not identified any legal rule that bars a judge from considering this type of conduct as reflecting poorly on a defendant's acceptance of responsibility. Indeed, we have held to the contrary. "Post-arrest cooperation cannot be assessed in a vacuum," and we've distinguished between cooperation that "represents an opportunistic attempt to obtain a sentence reduction" and cooperation that represents "a genuine alteration in the defendant's life perspective." *Chapman*, 532 F.3d at 629.

Moreover, a judge may consider the § 3553(a) sentencing factors when presented with a Rule 35(b) motion, *id.*, and a defendant's lack of remorse can bear on that analysis, *see, e.g.*, *United States v. Wood*, 31 F.4th 593, 601 (7th Cir. 2022) (including the defendant's "lack of genuine remorse" in the § 3553(a) analysis); *United States v. Norwood*, 982 F.3d 1032, 1058 (7th Cir. 2020) (approving of the judge's consideration of the defendant's lack of remorse and its connection with the need for deterrence); *Bergmann v. McCaughtry*, 65 F.3d 1372, 1379 (7th Cir. 1995) ("It is well established that a sentencing court may consider lack of remorse when imposing a sentence.").

And although we've cautioned that "[f]rustration in the face of repeated post-conviction filings" should not be used as a basis to reject a sentence-modification motion under § 3582(c), *United States v. Purnell*, 701 F.3d 1186, 1191 (7th Cir. 2012), we've also said that a judge may permissibly consider a defendant's postconviction conduct—including his court filings—as evidence of lack of remorse and failure to accept responsibility, *id.* at 1191–92.

Nothing here suggests that frustration with Johnston's frivolous court filings "permeate[d]" the judge's decision or that she punished him for his vexatious litigation conduct. *United States v. Lewis*, 817 F.3d 1054, 1055 (7th Cir. 2016). Rather, the judge identified genuine "acceptance of one's own responsibility" as an important sentence-modification factor. She concluded that Johnston's assistance to the government, though certainly helpful, was largely (though not wholly) outweighed by his failure to accept responsibility, as reflected in his repetitive frivolous postconviction litigation. Perhaps this conduct didn't deserve the weight she gave it, but that's a discretionary judgment beyond our scope of review.

Johnston's final arguments are more easily resolved. He claims that the judge failed to consider some of the § 3553(a) factors. But judges do not need to consider all the § 3553(a) factors when ruling on a Rule 35(b) motion; a sentence-modification proceeding is not a full resentencing. *United States v. Webster*, 666 F.3d 1023, 1025 (7th Cir. 2012) ("Rule 35(b) hearings do not provide an opportunity for a full resentencing."); *see also Purnell*, 701 F.3d at 1190 ("We do not require the district court to analyze each section 3553(a) factor … ."); *Chapman*, 532 F.3d at 630–31 (rejecting the argument that the judge should have considered "the need to avoid unwarranted sentencing disparities," a § 3553(a) factor, because the judge "emphasize[d] other relevant § 3553(a) factors" and stated that he considered the relevant factors).

Johnston also contends that the judge did not adequately explain her decision. Not so. The judge acknowledged that Johnston's assistance was "unquestionably useful to the

government" but explained that a 25% sentence reduction was unwarranted based on his lack of remorse and because her evaluation of the § 3553 factors had "resulted in a substantial sentence just two years ago." Johnston relies on *United States v. Harrington*, 834 F.3d 733 (7th Cir. 2016), as support for his argument that the judge's explanation was inadequate. That case, like this one, involved a partial grant of a Rule 35(b) motion, but the similarities go no further. We remanded in *Harrington* after finding "a lack of clarity" in the judge's explanation of her ruling. *Id*. at 737.

There is no lack of clarity in the judge's ruling in this case. "The court is required only to articulate the basis for its decision clearly enough for this court to determine whether the decision is reasonable." *Purnell*, 701 F.3d at 1190. The judge did so here.

AFFIRMED