In the

# United States Court of Appeals

## for the Seventh Circuit

———————————

No. 21-1778

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DERRICK DAVIS,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 20 CR 603 — **Ronald A. Guzmán**, *Judge.*

———————————

ARGUED NOVEMBER 12, 2021— DECIDED AUGUST 4, 2022

———————————

Before SYKES, *Chief Judge*, and RIPPLE and ST. EVE, *Circuit Judges*.

SYKES, *Chief Judge*. On June 15, 2019, Chicago police were sent to the area of Sacramento Boulevard and Fillmore Street to investigate a report of shots fired. When the officers arrived, they saw two cars that had just collided at that location. They also noted signs of a shoot-out. One of the crashed cars had a bullet hole in its windshield and a shat-

tered rear window. A bystander reported that one of the drivers had a gun.

As the officers approached, they saw Derrick Davis toss a handgun under a nearby parked car. Davis was the driver of one of the crashed cars—the one with the bullet damage. The officers arrested him and recovered the firearm, a loaded Beretta with a bullet in the chamber.

While in jail Davis called an unidentified third party and described what happened in the moments before the crash. According to the government's interpretation of the record-ed call, Davis's description contained an admission that he had actively participated in the shoot-out.

A grand jury indicted Davis for possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). He pleaded guilty pursuant to a written plea agreement in which he admitted that he unlawfully possessed—and tried to hide—the loaded Beretta handgun. He did *not* admit that he participated in the shoot-out. The presentence report ("PSR") noted Davis's incriminating phone call from jail but recommended against applying a sentencing enhancement for possessing the firearm in connection with another felony—i.e., the shooting. *See* U.S.S.G. § 2K2.1(b)(6)(B). The probation officer conclud-ed that the evidence was insufficient to support a finding that Davis was involved in the shooting.

Without objection, the district judge adopted the PSR's findings. Nevertheless, the government argued that the recorded phone call established Davis's active participation in the shoot-out. The judge agreed and relied on that fact to justify an above-Guidelines sentence of 84 months in prison.

The sentencing decision rests on conflicting findings that cannot be reconciled. The judge adopted the PSR's recommendation *not* to apply the § 2K2.1(b)(6)(B) enhancement because the evidence was insufficient to prove Davis's involvement in the shooting. Yet the judge *accepted* the government's position that the recorded phone call from jail established that Davis was indeed an active participant. And the judge explained his above-Guidelines sentence in large part by reference to that finding. The inconsistency in the judge's findings is a procedural error that warrants correction. We vacate and remand for resentencing.

## I. Background

In the early afternoon of June 15, 2019, Chicago police were dispatched to the area of South Sacramento Boulevard and West Fillmore Street in response to a shots-fired alert. When they arrived, they saw that a Chrysler minivan had just collided with another vehicle at that location. The minivan had a bullet hole in its windshield, and its rear window was shattered. A witness told the officers that the driver had a gun.

As the officers drew closer to the crashed cars, they saw Derrick Davis, later identified as the driver of the minivan, try to hide a handgun by throwing it under a Nissan sedan parked nearby. The officers arrested Davis and recovered the firearm, a Beretta 9mm semiautomatic handgun. The gun was loaded with 11 rounds, including one in the chamber.

Davis has a long felony record, including drug-trafficking and firearms offenses. He was referred for federal prosecution and indicted on one count of possessing a firearm as a felon in violation of § 922(g)(1). He pleaded

guilty pursuant to a written plea agreement that left the parties free to argue for whatever sentence they thought appropriate.

On his counsel's advice, Davis was interviewed by the probation agent assigned to prepare the PSR. He told the agent that he was on his way to work on June 15 when he became the victim of a random shooting in the area of Sacramento and Fillmore. As Davis described the incident, he had to duck his head to avoid being shot, which resulted in the collision and the bullet damage to his minivan. He claimed that he had the gun in his vehicle for protection and was in the process of transferring it from his cousin's girl-friend's house to his cousin's house. He knew, however, that he was prohibited from possessing a firearm because of his prior felony convictions.

While Davis was in the Cook County Jail after his initial arrest, he placed a call to an unidentified friend and gave a very different description of the events on June 15—an account that depicted his presence at the scene of the shoot-ing as anything but random. The phone conversation was recorded and is central to the issue in this appeal.

According to the government's partial transcript of the call, the recipient of the call asked Davis if he was "seeing red and all" and "[y]ou know to go" just before the accident. In response Davis recounted being upset about something (it's not clear what) and told his friend that he retrieved his gun, drove to the scene, and then the shooting took place:

> I swear to God, bro. Could not stop me bro. Could nothing stop me. I ran the stop sign, ran the red light … All the way to the crib, all the

> way back over there, bro. That's how I knew I was going to jail, bro. … I ran right past. I show the blinker, like letting them know where I'm going. Then I come all the way around to California, through the park, back of the park. Come out Roosevelt. Hit down Mozart. Took Mozart all the way to Fillmore … come up to Fillmore, straight down there … [sound of pretend gunfire]. Five minutes, all that in five minutes' span.

The police never identified the people involved in the shooting. The PSR reported that FBI Task Force Officer Kenya Smith, the case agent, reviewed the recorded call and concluded that Davis was an active participant in the shoot-out.

The Sentencing Guidelines specified a base offense level of 20. Section 2K2.1(b)(6)(B) calls for an upward enhancement of four levels if the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." Although Officer Smith had concluded that Davis had participated in the shooting—unquestionably a felony offense—the probation officer recommended against applying the § 2K2.1(b)(6)(B) enhancement because of a "lack of evidence, to include that the other individuals involved in the shoot-out were never identified."

Davis's acceptance of responsibility reduced his offense level to 17. That final offense level, when combined with his criminal history category of VI, yielded a Guidelines sentencing range of 51 to 63 months in prison.

In its sentencing memorandum, the government agreed with the probation officer's Guidelines calculation. The prosecutor recommended a sentence at the high end of the range, arguing that Davis's participation in the shoot-out was a serious aggravating factor. Relying on the recorded jail phone call, the government maintained that Davis was not an innocent bystander but in fact "used the firearm during a shoot-out with other unidentified individuals." The government apparently overlooked—or at least did not acknowledge—the probation officer's contrary determination in connection with the PSR's recommendation against applying the § 2K2.1(b)(6)(B) enhancement.

At the beginning of the sentencing hearing, the judge asked if either party objected to anything in the PSR. The defense attorney noted a minor mistake in the date on which Davis was arrested by the FBI on the § 922(g)(1) charge, which might have had an effect on his credit for time in custody. The judge corrected the error. With that, there were no objections, and the judge adopted the PSR in full.

The prosecutor then reiterated the primary argument raised in his sentencing memorandum: that Davis's recorded phone call from jail made it "clear" that he was "knowingly involved in the shoot-out" that preceded the collision. The prosecutor acknowledged that it was "not clear what he was angry about," but "he was angry about something, which led him to intentionally drive to the scene" armed with a loaded gun. That conduct, the prosecutor said, "underscores the nature of the danger that is posed in cases like these, the risk from—not only to other participants in the shoot-out, of course, but also to uninvolved bystanders."

Davis's attorney responded that the recorded phone call could not support the conclusion that Davis was involved in a shoot-out. She also pointed out that there was no evidence that the Beretta had recently been fired. She urged the court to impose a sentence slightly below the Guidelines range.

The judge then announced his evaluation of the sentencing factors in 18 U.S.C. § 3553(a). He said that he had read the partial transcript of the recorded phone call and listened to the recording in its entirety. Based on that review, he found "the government's interpretation of the defendant's conversation to be more probably true than not." He further explained: "[I]t appears to me that [the phone call] is clearly the defendant describing what he did on that day. And the language he use[d] leaves little room for mistake that he was referring to something he did intentionally and … violently on that day." The judge then rejected Davis's story, stating that the phone call did not give "a description of somebody peacefully driving by on the street and getting shot at and then trying to get away." As the judge interpreted the call, Davis was telling his friend that he intentionally went to the scene, running stop signs and driving recklessly, and ultimately "engaged in a shoot-out, in possession of a gun he had no right to possess." Additionally, the judge noted that Davis "knew he was going to go to jail if he got caught[,] … and he's telling his friend that." The judge concluded: "I have no difficulty interpreting [the phone call] the way the government present[ed] it."

The judge said he was "disappointed" that Davis was still "refuting and denying" his participation in the shoot-out. Finally, the judge emphasized that Davis's "boasting of what he did in this case to his friend in that phone conversa-

tion[] reflects either the total failure to understand the seriousness of what he did or, even worse, a complete lack of respect for the law and the safety of others."

Based largely on his finding that Davis was an active participant in the shoot-out rather than an innocent bystander, the judge imposed an above-Guidelines sentence of 84 months in prison. Davis appealed, challenging the procedural soundness of his sentence.

## II. Discussion

"Regardless of whether the sentence imposed is inside or outside the Guidelines range," our first step in a sentencing appeal is to

> ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

*Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v. Lockwood*, 789 F.3d 773, 781 (7th Cir. 2015); *United States v. Lyons*, 733 F.3d 777, 784 (7th Cir. 2013).

Davis raises a claim of procedural error related to the judge's factual finding that he participated in the shoot-out. Our review for procedural error is de novo. *United States v. Faulker*, 885 F.3d 488, 498 (7th Cir. 2018). We review factual findings at sentencing for clear error. *United States v. Brown*,

843 F.3d 738, 741 (7th Cir. 2016). Davis argues that the judge selected the sentence based on a clearly erroneous finding of fact—namely, that he was an active participant in the shoot-out rather than an innocent victim of it.

We agree that the sentence is procedurally flawed, but it's an odd sort of error grounded in conflicting cues from the government. First, without objection from the government, the judge accepted the probation officer's determination that the evidence was insufficient to support a finding that Davis possessed the Beretta in connection with another felony offense—i.e., the shooting—and on that basis declined to apply the § 2K2.1(b)(6)(B) enhancement. Then, when evaluating the § 3553(a) factors, the judge accepted the government's interpretation of Davis's jail phone call and found that he intentionally went to the scene, angry and armed with the Beretta, and was actively involved in the shooting.

These findings are contradictory, and we see no way to reconcile the inconsistency. The error can be classified as either a defect in the judge's fact-finding or an irregularity in his explanation of the above-Guidelines sentence. Either way, the sentence rests on a significant procedural error. The judge explained the 84-month sentence largely by reference to his finding that Davis participated in the shoot-out.

The government responds that the PSR's findings can be reconciled with the judge's remarks at sentencing because a determination that Davis participated in the shoot-out does not—or need not—also entail a finding that he possessed the Beretta in connection with another felony offense. This argument is hard to follow, at least as the government presented its case below. The prosecutor argued that the jail

phone call showed that Davis "used the firearm during a shoot-out with other unidentified individuals." That's a felony in Illinois. *See, e.g.*, 720 ILL. COMP. STAT. 5/24-1.5 (making reckless discharge of a firearm a felony). The judge accepted this argument, finding that Davis was in fact a participant in the shoot-out. That finding directly conflicts with the PSR's findings and recommendation against an enhancement under § 2K2.1(b)(6)(B), which the judge also adopted.

Perhaps what the judge meant to say is that Davis went to the scene intentionally and looking for trouble but did not actually fire his gun. That finding could perhaps be reconciled with the PSR's recommendation against the application of the § 2K2.1(b)(6)(B) enhancement. But that's not what the judge said. As it stands, the record reflects an inscrutable inconsistency in the factual findings on which the judge based his choice of sentence.

Accordingly, resentencing is in order. We therefore VACATE the sentence and REMAND for resentencing.