In the

# United States Court of Appeals

## for the Seventh Circuit

_____

No. 23-1249

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DERRICK DAVIS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 20-CR-603 — **Ronald A. Guzmán**, *Judge.*

_____

ARGUED FEBRUARY 22, 2024 — DECIDED MARCH 10, 2026

_____

Before RIPPLE, SYKES, and ST. EVE, *Circuit Judges.*

SYKES, *Circuit Judge.* On a summer afternoon in 2019, Chicago police responded to a report of shots fired on the city's west side. At the scene they saw a two-car collision and signs of a shooting: one of the crashed cars, a minivan, had obvious bullet damage. The driver, later identified as Derrick Davis, got out of the minivan and walked toward a parked car nearby.

An eyewitness warned the officers that the driver of the minivan had a gun. When Davis reached the rear passenger side of the parked car, the officers stopped him and found a loaded Beretta handgun that he had tossed underneath the car.

Davis has a lengthy felony record and was on state parole at the time of these events. He was arrested and transported to the Cook County Jail. Soon after, he called a friend from jail and discussed the shooting and crash. He gave a detailed description of his route to the scene, making clear that he had driven there intentionally and had not been present by happenstance. He bragged about running a red light and stop sign on the way, saying: "Could not stop me bro. Could nothing stop me." He also mimicked the sound of gunfire.

More than a year after his arrest, a federal grand jury indicted Davis for possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). He eventually pleaded guilty. The probation officer who prepared the presentence report ("PSR") considered an enhancement under the Sentencing Guidelines for possessing the firearm in connection with another felony offense—namely, the shoot-out. *See* U.S.S.G. § 2K2.1(b)(6)(B) (2021). But she ultimately recommended against it based on insufficient evidence. The district judge adopted the PSR's recommendations and imposed an above-Guidelines sentence of 84 months in prison.

When this case was first before us, we noted a procedural anomaly in Davis's sentencing hearing: after adopting the PSR's factual findings—including the finding that insufficient evidence tied Davis to the shooting—the judge credited the government's argument that the jail call confirmed Davis's participation in the shoot-out. Based on that irreconcilable

conflict, we vacated the sentence and remanded for resentencing. *United States v. Davis*, 43 F.4th 683, 688 (7th Cir. 2022).

The judge again accepted the PSR's findings and reimposed the 84-month sentence. Davis again appeals, asserting that the judge made the same procedural error. He also raises a substantive claim, arguing that because the parties now agree that he was not involved in the shoot-out, there was no basis for imposing another 84-month sentence.

Neither challenge has merit. This time the judge clearly explained why he thought the jail phone call was significant: it showed that Davis had intentionally placed himself at the scene of a violent confrontation, armed with a loaded gun, and then bragged about it afterward. His reckless conduct and cavalier attitude—together with his extensive criminal history—influenced the judge's decision to reimpose the above-Guidelines sentence. Nothing in the judge's remarks at resentencing is inconsistent with the PSR, and the 84-month sentence is otherwise amply justified. We affirm.

## I. Background

On the afternoon of June 15, 2019, Chicago police responded to a reported shoot-out on the city's west side at the intersection of South Sacramento Boulevard and West Fillmore Street. When they arrived at the scene, they saw that a Chrysler minivan had just collided with another vehicle. The minivan had a bullet hole in the windshield and a shattered rear window. A bystander told the officers that the driver of the minivan had a gun.

An officer who was already at the scene saw the driver, Derrick Davis, step out of the minivan and start walking toward a white Nissan sedan that was parked next to it. As

Davis reached the rear passenger side of the Nissan, the officers detained him and searched the area around the car. They recovered a Beretta 9mm semiautomatic pistol underneath the Nissan next to where Davis stood. The gun was loaded with 11 rounds, including one in the chamber.

Davis's criminal record includes multiple felony convictions, and he was on parole for a state offense. The officers arrested him and took him to the Cook County Jail. About a week later, Davis called a friend from the jail and told him about the shooting and the crash. The friend asked if he had been "seeing red and all." Davis responded:

> I swear to God, bro. Could not stop me bro. Could nothing stop me. I ran the stop sign, ran the red light … . All the way to the crib, all the way back over there, bro. That's how I knew I was going to jail, bro. … I ran right past. I show the blinker, like letting them know where I'm going. Then I come all the way around to California, through the park, back of the park. Come out Roosevelt. Hit down Mozart. Took Mozart all the way to Fillmore … come up to Fillmore, straight down there … [sound of pretend gunfire]. Five minutes, all that in five minutes' span.

Davis initially faced state charges but was later referred to federal authorities for possible prosecution. About 15 months after his arrest, a federal grand jury returned an indictment charging him with possessing a firearm as a felon in violation of § 922(g)(1). Law enforcement was ultimately unable to identify those responsible for the shooting, so the state charges against Davis were dismissed.

Davis eventually pleaded guilty to the § 922(g)(1) charge pursuant to a plea agreement in which he admitted that he knowingly possessed the Beretta 9mm handgun at the scene of the shooting and crash. He also admitted that he threw the gun under the parked Nissan to hide it from police. The plea agreement described the parties' preliminary understandings concerning the anticipated Guidelines sentencing range but left each side free to recommend an appropriate sentence and acknowledged that the agreement was not binding on the court.

Davis's criminal record includes a felony drug-trafficking conviction, so to calculate his advisory Guidelines sentencing range, the probation officer started from a base offense level of 20. *See* U.S.S.G. § 2K2.1(a)(4)(A). The probation officer considered adding a four-level enhancement for possessing the firearm "in connection with another felony offense"—here, the shooting. *Id.* § 2K2.1(b)(6)(B). But she ruled it out based on insufficient evidence that Davis had fired his gun.

Indeed, in his interview with the probation officer, Davis had painted quite the opposite picture. He portrayed himself as a victim caught in the wrong place at the wrong time. More specifically, he told the probation officer that he had been driving to work when he heard gunshots. He said he ducked to avoid being shot, which caused him to crash into the other vehicle.

Consistent with the understandings reflected in the plea agreement, the probation officer applied the full three-level reduction for acceptance of responsibility, which reduced the offense level to 17. With Davis's criminal-history category of VI—the highest under the Guidelines—the sentencing range

was 51 to 63 months in prison. Neither Davis nor the government objected to the Guidelines calculations in the PSR.

The judge accordingly adopted the probation officer's findings in full at the beginning of the sentencing hearing. The government then urged the judge to impose a sentence at the top of the range based primarily (though not entirely) on Davis's jail phone call, which the prosecutor characterized as evidence that he had actively participated in the shoot-out. Davis argued for a below-range sentence. The judge agreed with the government's argument that the jail phone call established Davis's involvement in the shoot-out, contradicting his earlier acceptance of the PSR's finding to the contrary. And largely for that reason, the judge sentenced Davis to 84 months in prison—21 months above the top of the advisory range.

We vacated that sentence and remanded for resentencing, explaining that "the record reflects an inscrutable inconsistency in the factual findings on which the judge based his choice of sentence." *Davis*, 43 F.4th at 688. The judge had adopted the PSR's finding that insufficient evidence linked Davis to the shoot-out yet also endorsed the government's argument that the jail phone call confirmed his involvement. Resting the above-Guidelines sentence on such a glaring contradiction was a procedural error warranting resentencing. *Id.* at 687–88.

On remand the judge again adopted the PSR—and all its findings—in full. The judge then invited the parties to present new arguments about the appropriate sentence. The government addressed the factual inconsistency that had plagued the first sentencing hearing. The prosecutor noted the government's agreement with the PSR's finding that the evidence

was insufficient to establish that Davis had discharged his firearm. And he emphasized that he was *not* arguing that Davis was involved in the shoot-out. He clarified that the government's position regarding the jail phone call—both at the original sentencing hearing and now—was that it refuted Davis's claim that he was just an innocent bystander. It showed that he had intentionally driven to the area of the shooting, armed with his Beretta pistol and ready to use it. And although the evidence was insufficient to establish that Davis had fired his gun, the prosecutor argued that his reckless conduct justified the original sentence of 84 months. He urged the judge to reimpose it.

The judge asked the prosecutor why he was deviating from his original recommendation of a 63-month sentence. The prosecutor replied that his new recommendation was influenced by the judge's initial decision to impose an above-Guidelines sentence, which the government now thought was well justified. He also said that the government's change in position was prompted by "how the facts played out at the initial sentencing hearing."

With considerable justification, Davis's attorney criticized the prosecutor for glossing over the fact that he had previously claimed that the jail phone call was clear evidence of Davis's involvement in the shoot-out. Accusing the government of "flip-flopping" for no good reason—or only feeble reasons—she emphasized that nothing about the call had changed, nor had additional evidence been introduced to substantiate it. The call could be interpreted in any number of ways, she added, but the government was essentially trying to smuggle in the four-level Guidelines enhancement that the

probation office had declined to recommend. She urged the judge to impose a within-Guidelines sentence.

The judge began his sentencing remarks by reviewing Davis's personal circumstances and lengthy criminal history. Davis had been in and out of prison since turning 18 in 2002, and his criminal history occupied several pages of the PSR. The judge then turned to the jail call, noting that although it seemed clear that Davis was "insinuating, if not actually saying, that he was involved in a shootout," the call was not enough to confirm his participation, and the evidence was otherwise insufficient to establish that Davis had fired his gun.

The judge explained that the call was important for a different reason: it exposed Davis's state of mind. More specifically:

> The excitement in his voice is unmistakable when he describes his reckless drive, running stop signs or streetlights to arm himself and returning to the scene of the confrontation. It's clear that he is proud of this. It's clear that he is boasting about doing this. It is clear that in his mind this was a really good thing to do.

In short, the key point was that Davis had no appreciation for the seriousness of his "profoundly dangerous" conduct. And that, the judge said, "is the importance of this conversation, not whether he fired his weapon or not."

Because Davis had repeatedly disregarded "what is good and right," the judge determined that he posed a danger to the community and was resistant to rehabilitation. The judge thus concluded that the advisory range of 51 to 63 months

remained inadequate and reimposed the above-Guidelines sentence of 84 months.

## II. Discussion

Davis returns with two challenges to the reimposed 84-month sentence, one procedural and one substantive. His procedural claim is a reprise of his first appeal: he argues that the judge committed the same error by imposing an above-Guidelines sentence based on contradictory findings about his role in the shoot-out. His second claim is that the sentence is substantively unreasonable because the parties agreed at resentencing that he had *not* discharged his gun, yet the judge reimposed the same 84-month sentence anyway.

There was no repetition of the prior procedural error. Unlike Davis's first sentencing hearing, this one was procedurally sound. The judge did not, as Davis contends, rely on impermissible "speculation or unfounded allegations" about his role in the shoot-out. *United States v. Halliday*, 672 F.3d 462, 475 (7th Cir. 2012) (quotation omitted). Rather, the judge reimposed the same above-Guidelines sentence because of Davis's callous disregard for the law as reflected in his long criminal history and—more relevant here—the jail phone call.

This time the judge carefully explained the significance of the jail phone call. He made clear that he did not construe it as evidence that Davis had actually fired his gun; rather, he considered the call significant because it demonstrated Davis's reckless disregard for the law and the safety of others. It established that he had intentionally placed himself at the scene of a violent confrontation armed with a loaded

handgun; it also showed that he was thrilled about breaking the law.

Davis challenges the judge's characterization of the jail call, insisting that it is susceptible to multiple interpretations and might be better understood as an exaggerated (or even false) version of events designed to boost his reputation with his friend at the other end of the line. That strikes us as implausible, but the key point for our purposes is that after listening to the call and reading a transcript of it, the judge concluded otherwise. It is a fundamental principle of sentencing law that the trial court is in a superior position to find facts, assess their import, and choose an appropriate sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007). Our review is therefore deferential: we will not reverse a sentencing judge's factual findings absent clear error. *United States v. Dennis*, 119 F.4th 1103, 1109 (7th Cir. 2024). It was not error, much less clear error, for the judge to take Davis's boasting at face value.

Davis focuses on a single comment nested within the judge's explanation of the importance of the jail call: the judge said that Davis's detailed narrative of his route to the scene and mimicking of gunfire "insinuated" that he had fired his gun. In Davis's view, this comment confirms that the judge yet again rested his sentence on inconsistent findings about his role in the shoot-out.

That contention cannot be squared with the record taken as a whole. Immediately following this statement, the judge twice disclaimed any finding that Davis participated in the shoot-out and reiterated his agreement with the parties and the PSR that the evidence was insufficient to show that Davis

had actually fired his gun.[1] Having reviewed the judge's statement in context and the record in full, "[w]e see no reason not to take the court at its word." *United States v. Stinefast*, 724 F.3d 925, 931 (7th Cir. 2013).

Besides, the judge also cited Davis's extensive criminal history as a basis for the choice of sentence. As the judge noted, Davis's record spans more than two decades and features multiple serious crimes, including drug trafficking, fleeing from law enforcement, domestic battery, and aggravated use of a weapon. And despite multiple opportunities for reform and rehabilitation, Davis had not ceased his criminal conduct. Rather, he took pride in continuing it. The judge thus determined that Davis had difficulty discerning "what is good and right." Davis has given us no reason to second-guess that conclusion.

That brings us to Davis's substantive challenge. Repackaging many of the arguments we've already addressed, Davis contends that the judge lacked any reasonable basis for imposing an identical 84-month sentence on remand. At the initial sentencing, the judge rested this sentence largely on the contradictory findings concerning Davis's role in the shootout. On resentencing the parties agreed that he had played no such role. Davis accuses the judge of unreasonably failing to adjust the original sentence downward to reflect this modified understanding of his culpability.

---

[1] Davis seems to argue that this conclusion can't be reconciled with the judge's earlier description of the phone call. We disagree. Both things can be true at once: first, the call can be understood to suggest that Davis was implicated in the shooting; and second, the evidence as a whole—including the call—is insufficient to confirm his participation in it.

As noted, district judges have broad discretion over sentencing decisions, and if a sentence is procedurally sound, we review it under a deferential standard of reasonableness. *United States v. Ingram*, 40 F.4th 791, 796 (7th Cir. 2022). Claims of substantive error are reviewed for abuse of discretion, and reversal is inappropriate unless the sentence "falls outside the broad range of objectively reasonable sentences in the circumstances." *United States v. Wood*, 31 F.4th 593, 600 (7th Cir. 2022) (quotation omitted). "Substantive reasonableness occupies a range, not a point, and an above-Guideline sentence is neither presumptively nor absolutely unreasonable." *Id.* (alteration and quotation omitted). And "[w]e take care not to substitute our judgment for that of the district court, which is better situated to make individualized sentencing decisions." *Id.* (quotation omitted).

The judge was well within his discretion to reimpose the 84-month above-Guidelines sentence based on Davis's persistent disregard for the law as reflected in his troubling criminal history and the boastful jail call. True, the ground had shifted in Davis's favor between the first and second sentencing hearings: the jail call was no longer treated as evidence of his participation in the shoot-out. Perhaps that change created an expectation of a reduced sentence. No matter. When we vacate a defendant's sentence in its entirety, resentencing occurs "on a clean slate." *Krieger v. United States*, 842 F.3d 490, 505 (7th Cir. 2016); *see United States v. Mobley*, 833 F.3d 797, 802 (7th Cir. 2016) ("[T]he posture of the case on a full remand is just as if sentence has not yet been pronounced … ."). So on remand the judge may "hear new evidence or arguments," or he may "reconsider the same evidence and arguments" and decide to weigh them differently. *Mobley*, 833 F.3d at 802. Either way, the judge retains discretion "to impose the exact

same sentence as was imposed at the original sentencing hearing." *Id.*

These principles resolve Davis's substantive challenge. Taking a fresh look at the record and reviewing the sentencing factors anew, the judge reasonably determined that the Guidelines range "did not adequately reflect the seriousness of [Davis's] conduct." *United States v. Musgraves*, 883 F.3d 709, 716 (7th Cir. 2018). Davis has a lengthy and serious criminal record—many more convictions than necessary to assign a criminal-history category of VI. And he was proud of his "profoundly dangerous" conduct. These facts, the judge explained, made him an unlikely candidate for rehabilitation and a danger to the public. On this modestly modified analysis, the 84-month sentence remained appropriate. That sentence is not objectively unreasonable, and the judge did not exceed his broad discretion in reimposing it.

AFFIRMED